770 F.2d 375
 Roy HICKS, Appellant,
v.
Robert C. FEENEY, individually and in his official capacity
as Hospital Director of the Delaware State Hospital, a
facility in the Division of Mental Health, Department of
Health and Social Services State of Delaware.
 No. 84-5820.
 United States Court of Appeals,
Third Circuit.
 Argued June 21, 1985.
Decided Aug. 26, 1985.
 
 Joseph M. Bernstein (argued), Wilmington, Del., for appellant.
 Marcia Rees (argued), Margaret S. Proctor, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for appellees.
 Before ADAMS, HUNTER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 Roy Hicks appeals the order of the district court granting summary judgment to Robert C. Feeney, the former director of Delaware State Hospital ("DSH"). Hicks sued Feeney under 42 U.S.C. Sec. 1983 (1982), alleging deprivation of procedural due process when he was involuntarily confined in DSH. For the reasons stated herein, we vacate the district court's order and remand for reconsideration of Feeney's immunity claim in light of Mitchell v. Forsyth, --- U.S. ----, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
 
 I.
 
 2
 On November 18, 1982, the Delaware Family Court convicted Hicks of civil contempt after he telephoned his ex-wife in defiance of a court order. The Family Court sentenced Hicks to a thirty day suspended sentence and one year's probation. As a condition of his probation, the Family Court ordered that Hicks be committed to DSH for a period of seventy-two hours for evaluation and treatment, and, if recommended by DSH, for continued hospitalization "for such time as may be permitted by law, unless sooner discharged according to law."
 
 
 3
 The Delaware Involuntary Commitment Act, Del.Code Ann. tit. 16 ch. 50 (1983), prohibits the involuntary commitment of any person unless a tripartite procedure is followed. Id. at Sec. 5002. The individual may be provisionally admitted pursuant to the particularized, written certification of a psychiatrist that hospitalization is necessary. Id. at Sec. 5003. Next, the Act requires DSH to examine the individual and to provide, within three days of admission, a written certification as to whether the individual is mentally ill. Id. at Sec. 5005. If he is mentally ill, DSH must file, within six days of the provisional admission, a verified complaint with the proper state court seeking the patient's involuntary commitment. Id. at Sec. 5007.
 
 
 4
 None of this happened to Hicks. He was sent straight from Family Court to DSH where the admitting physician found Hicks to be alert and cooperative. On November 23, five days after Hicks's admission, Dr. William Levy, the Director of Forensic Psychiatric Services at DSH, wrote the committing judge indicating that "our initial impression" is that Hicks suffered from a "psychiatric condition" requiring further evaluation. A day later, Dr. Levy wrote the judge that Hicks exhibited the signs and symptoms of "a major mental illness" and recommended civil commitment. Not until almost three weeks after this correspondence, however, did DSH prepare the written determination of mental illness required by the Delaware Involuntary Commitment Act. DSH filed the verified complaint in Delaware Superior Court on December 27, 1982, thirty-nine days after Hicks's admission. Before the complaint could be heard, however, DSH released Hicks on January 12, 1983, concluding that he suffered only from an "adjustment disorder." Hicks spent a total of 54 days in DSH.
 
 
 5
 The district court concluded that the confinement procedures used in this case deprived Hicks of his fourteenth amendment procedural due process right under color of state law. The district court also concluded that Hicks's commitment resulted from the "unauthorized failure of agents of the State to follow established state procedure," citing Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), and that the post-deprivation remedies provided by state law provided adequate procedural due process under Parratt. Alternatively, the district court found that even if DSH deprived appellant of his fourteenth amendment right to procedural due process that Feeney was entitled to qualified immunity from section 1983 liability under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Hicks appeals the last two findings.
 
 II. The Procedural Due Process Claim
 Section 1983 provides in part:
 
 6
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 7
 In any Sec. 1983 action, the court must first make an inquiry to ascertain the presence of the two essential elements to a Sec. 1983 claim: whether the alleged conduct was committed by a person acting under color of state law and whether the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Parratt, 451 U.S. at 535, 101 S.Ct. at 1912.
 
 
 8
 Both sides agreed in open court that the procedure followed to commit Hicks violated a liberty interest protected by the fourteenth amendment. In light of Supreme Court precedent, any other position would be untenable. See Vitek v. Jones, 445 U.S. 480, 491, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980) (involuntary commitment from prison to a mental hospital requires due process protection); Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979) (civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection); O'Connor v. Donaldson, 422 U.S. 563, 575-76, 95 S.Ct. 2486, 2493-94, 45 L.Ed.2d 396 (1975) (state cannot confine a non-dangerous individual in a mental hospital); Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972) (involuntary commitment to a mental hospital produces a "massive curtailment of liberty").
 
 
 9
 Since Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the first prong of Parratt 's initial inquiry can be satisfied by a showing of either a deprivation caused by state officers acting pursuant to a state "custom or usage" or by the misuse of official power possessed by virtue of state law. After Parratt, supra, and Hudson v. Palmer, --- U.S. ----, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), this distinction also indicates whether post-deprivation state remedies might suffice to satisfy due process concerns, at least with respect to deprivations of property interests. Under Parratt and Hudson, if the deprivation is the result of the random and unauthorized conduct of a state employee, i.e., a misuse of official power, it is impractical for the state to provide pre-deprivational due process and the inquiry then focuses on the adequacy of state post-deprivation remedies. See Hudson, 104 S.Ct. at 3203. If, on the other hand, the deprivation occurs under color of state law pursuant to state law, custom, or usage, Parratt and Hudson do not apply because the state is able to anticipate the circumstances in which the loss will occur and to provide a meaningful hearing before the deprivation takes place. Parratt, 451 U.S. at 541, 101 S.Ct. at 1916; Hudson, 104 S.Ct. at 3203.
 
 
 10
 Both Parratt and Hudson were decided in the context of prisoners' property interests and do not address the issue at hand, the deprivation of a liberty interest. We recently noted in Davidson v. O'Lone, 752 F.2d 817 (3d Cir.1984) (in banc), cert. granted sub nom. Davidson v. Cannon, --- U.S. ----, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985), that a Sec. 1983 action will lie for "infringement of a liberty interest by intentional conduct, gross negligence or reckless indifference, or an established state procedure," and that "[t]he viability of such Sec. 1983 actions does not depend on whether or not a postdeprivation remedy is available in state court." Id. at 828 (footnote omitted). The increased protection we provide liberty interests in Sec. 1983 actions is premised upon the proposition that it is "untenable that the Court intended [in Parratt and Hudson ] to subject all suits for unconstitutional acts under color of law, including those implicating a liberty or life interest, to a state remedy, if available." Id.
 
 
 11
 Because the district court found that Hicks's deprivation resulted from the "random and unauthorized act" of a state officer rather than from the "state system itself," the district court applied the Hudson and Parratt analysis and examined the state remedies available to Hicks. Although Hicks's admission and confinement violated both the Delaware Involuntary Commitment Act and DSH's internal regulations, DSH in fact observed its usual procedure for court commitments, a procedure separate from and supplementary to the procedures in the Act and DSH's regulations. According to Feeney's affidavit:
 
 
 12
 The normal procedure utilized by the Delaware State Hospital in such court commitments is to evaluate the patient's physical and mental health needs and report the findings of this evaluation back to the court, often including recommendations concerning the utility of civil commitment. Unless the initial commitment directs otherwise, if the Delaware State Hospital believes that a court-committed patient should be civilly committed, the patient will be held at Delaware State Hospital until further instructions are received from the court.
 
 
 13
 DSH's court commitment procedure thus constituted an established state procedure that required a pre-deprivation hearing.[1]
 
 
 14
 We hold therefore that the district court erred in finding Parratt 's post-deprivation remedy exception to Sec. 1983 violations applicable to this case.
 
 III. The Immunity Defense
 
 15
 Alternatively, the district court found Feeney, in his capacity as director of DSH, entitled to a defense of qualified immunity from monetary damages.[2] The court reasoned that Feeney could not be said to have violated any "clearly established" rights of Hicks under the standard of Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)[3] because the constitutional rights of appellant as a probationer involuntarily committed to a mental hospital had yet to be defined. In so doing, the district court noted existing precedent which indicated that due process requires that a prisoner transferred to a mental hospital be afforded a hearing prior to involuntary commitment. Vitek v. Jones, 445 U.S. 480, 495-96, 100 S.Ct. 1254, 1264-65, 63 L.Ed.2d 552 (1980), but believed that the case was not sufficiently factually congruent to establish Hicks's rights or even constitute applicable law.
 
 
 16
 Qualified immunity from suits for civil damages brought under Sec. 1983 is a common law immunity that balances the need to compensate and to vindicate the rights of victims of constitutional torts with a concern that too broad a liability may cause public officials to refrain unnecessarily from discretionary decisions. See People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 143 (3d Cir.1984). It protects officials from unexpected liability by shielding them from monetary damages if their conduct conforms to that of the reasonable actor: "governmental officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." People of Three Mile Island, supra, 747 F.2d at 144 (quoting Harlow v. Fitzgerald, supra, 457 U.S. at 818, 102 S.Ct. at 2738). See Mitchell v. Forsyth, --- U.S. ----, ----, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Harlow leaves us with a puzzle, however, as to when a constitutional right should be considered "clearly established."
 
 
 17
 Problems in determining the requisite degree of factual correspondence between the applicable precedents and the case at issue make it difficult to define just what is "clearly established." People of Three Mile Island, 747 F.2d at 144. Under the so-called strict standard, courts require near factual identity between the cases. See e.g., Calloway v. Fauver, 544 F.Supp. 584, 607 (D.N.J.1982) (although legal principles clearly established, qualified immunity granted because specific question not yet resolved). This circuit recently rejected the strict standard in favor of a more flexible approach requiring some factual correspondence and demanding that officials apply well developed legal principles to the instant case. People of Three Mile Island, 747 F.2d at 144. The standard involves an inquiry into the general legal principles governing analogous factual situations, if any, and a subsequent determination whether the official should have related this established law to the instant situation. Id. This approach eliminates unexpected liability for public officials as well as prevents the occurrence of a mere "factual wrinkle" in an area of clearly established law from barring suit altogether. Id. at 148.
 
 
 18
 Because the district court erred in its application of People of Three Mile Island by requiring strict factual correspondence, we vacate its order granting qualified immunity to Feeney. On remand, the immunity analysis should focus on whether it was clearly established that Hicks could be involuntarily confined at DSH after the initial 72-hour period ordered by the family court judge. The district court's prior analysis focused on whether it was clearly established that a court could condition its grant of probation on an individual's being placed in a mental hospital, but that is not at issue here. Hicks does not contend that the initial 72-hour period ordered by the state judge violated the fourteenth amendment. Rather, plaintiff asserts that his involuntary confinement at DSH for another 51 days without any hearings violated his rights. Thus, Feeney's entitlement to qualified immunity hinges on whether it was clearly established that Hicks's confinement after the initial 72-hour period violated his constitutional rights. In considering this issue, the district court should examine the family court's order sending Hicks to DSH for 72 hours and permitting further hospitalization "for such time as may be permitted by law." Of course, if the district court finds that the applicable legal principles governing involuntary commitment are uncertain, Feeney should be granted immunity as unexpected monetary damages would unfairly force officials to guess the development of constitutional law. See Forsyth, --- U.S. at ---- - ----, 105 S.Ct. at 2817-20; Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).[4]
 
 IV.
 
 19
 After the district court's opinion and just prior to argument in this case, the Supreme Court decided the Forsyth case. Because the district court did not have the benefit of this opinion, we vacate the district court's order and remand for reconsideration of Feeney's immunity claim in light of Forsyth.
 
 
 
 [1]
 We note in passing that although the district court's order predates our opinion in Davidson, DSH's court commitment policy equally requires a pre-deprivation hearing under Parratt and Hudson
 
 
 [2]
 In rejecting Feeney's assertion of absolute immunity, the district court noted that as director of DSH, Feeney was an executive entitled only to qualified immunity under Harlow. At 19 n. 11. In Mitchell v. Forsyth, --- U.S. ----, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court refined Harlow's discussion of the governmental functions afforded absolute immunity. Forsyth, --- U.S. at ----, 105 S.Ct. 2812-14. Both Harlow and Forsyth teach that absolute immunity is a "functional immunity," related to the particular functions performed by the office rather than the broad characterization of the office as executive or ministerial. Forsyth, --- U.S. at ----, 105 S.Ct. at 2812; Harlow, 457 U.S. at 807, 102 S.Ct. at 2732
 
 
 [3]
 Although Harlow involved a Bivens -type constitutional tort claim, Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the elements of immunity for state officials sued under section 1983 and federal officials sued in a Bivens -type action are identical. See Harlow, 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30 (quoting Butz v. Economou, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978))
 
 
 [4]
 The district court also rejected appellant's claim that Feeney violated a liberty interest created by the Delaware Involuntary Commitment Act. Although not presented as an issue for review, appellant's brief suggests that the Act's procedures create a federally protected liberty interest and that Feeney's failure to follow them deprived Hicks of due process
 In Davis v. Scherer, --- U.S. ----, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), the Supreme Court observed that state officials sued for the violation of rights conferred by state statute or regulation forfeit their immunity from damages "only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages." Id. at 3020 n. 12. Thus, if the Delaware Involuntary Commitment Act gives rise to a liberty interest that forms the basis of the present action, Feeney may lose his qualified immunity for conduct clearly violative of the Act.
 On remand, the district court should consider whether the Involuntary Commitment Act creates a liberty interest which forms the basis of a Sec. 1983 action, using the standard enunciated in Hewitt v. Helms, 459 U.S. 460, 466, 471-72, 103 S.Ct. 864, 868, 871-72, 74 L.Ed.2d 675 (1983) and Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). If the court finds such an interest, it should then consider appellant's due process claim in light of Davis. See id. 104 S.Ct. at 3020 n. 12, 3021 n. 14; c.f. Spruytte v. Walters, 753 F.2d 498, 507-08 (6th Cir.1985) (finding a property interest protected by the due process clause of the fourteenth amendment). See also Arnett v. Kennedy, 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974) (Powell, J., and Blackmun, J., concurring in part and concurring in the result in part) (presence of a legitimate "property" or "liberty" interest within the meaning of the fifth or fourteenth amendment prerequisite to constitutional due process protection). We express no opinion, however, as to whether the Delaware Involuntary Commitment Act creates a liberty interest.