Paul VERSARGE, Appellant,

v.

The TOWNSHIP OF CLINTON NEW JERSEY; Annandale Hose Company No. 1, a New Jersey Corporation; William Faust, III.

No. 91–6040.

United States Court of Appeals, Third Circuit.

Argued July 7, 1992.

Decided Feb. 2, 1993.

---

Arthur H. Miller and Lynn F. Miller (argued), Miller & Littman, New Brunswick, NJ, for appellant.

Marc A. Vaida, Vaida & Manfreda, Flemington, NJ for appellee, Township of Clinton.

Cynthia M. Jacob, Patricia S. Robinson (argued), Collier, Jacob & Mills, Somerset, NJ, for appellees, Annandale Hose Co. No. 1 and William Faust, III.

Before: SLOVITER, Chief Judge, STAPLETON and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Paul Versarge ("plaintiff") brought this action after his expulsion as a member of a volunteer fire company. He appeals from the order of the district court granting summary judgment in favor of the Township of Clinton; Annandale Hose Company No. 1; and William Faust, III (collectively "defendants") and denying his cross-motion for summary judgment. Plaintiff pled violations of the First and Fourteenth Amendments and sought relief under 42 U.S.C. § 1983 (1988). He also pled related claims under the New Jersey Constitution and state law.

The district court had jurisdiction over this action to redress an alleged violation of plaintiff's federal constitutional rights pursuant to 28 U.S.C. § 1331 (1988) and 28 U.S.C. § 1343(a)(3) (1988). It had supplemental jurisdiction over the state law claims under 28 U.S.C.A. § 1367(a) (West Supp.1992). We have jurisdiction over this appeal from a final order of the district court pursuant to 28 U.S.C. § 1291 (1988).

On this appeal from a grant of summary judgment, "[t]he non-movant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In addition, "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Id.* Our review is plenary. *Id.* We turn to the unchallenged facts underlying plaintiff's claims. We also identify material facts that are in dispute.

## I. FACTUAL BACKGROUND

The defendant Annandale Hose Company No. 1 ("Hose Company") is a volunteer fire department organized as a not-for-profit corporation serving residents of the defendant Township of Clinton. Plaintiff became a member of the Hose Company in March of 1978 and continued his membership until his expulsion. From 1984 through 1988, plaintiff also served as Director of Community Issues for the Deer Meadow Homeowners Association ("Homeowners Association").

In 1988, in his capacity as a director of the Homeowners Association, plaintiff petitioned the Mayor and Township Council of Clinton to close a street, Moebus Place, to traffic. In April of 1988, the Mayor and Council requested that defendant Faust, who was then Fire Chief, advise them of the Hose Company's official position on the street-closure issue. In response, Faust wrote a letter on behalf of the Hose Company opposing the closure of Moebus Place. Faust's letter asserted that closing Moebus Place to traffic would create an unsafe condition by making it more difficult for emergency vehicles to respond to emergencies in Deer Meadow.

On the morning of April 28, 1988, plaintiff telephoned Faust at his place of business to express plaintiff's strong disagreement with the position on the street-closure issue taken in Faust's letter. Faust declined to discuss the matter at that time. Approximately one hour later, plaintiff telephoned Faust at work a second time to discuss the matter. When making that second telephone call plaintiff realized, based upon Faust's telephone exchange, that Faust did not work within the Township of Clinton. Plaintiff, who knew that Faust drove a Township-owned vehicle to work, then told Faust that he should not be driving a vehicle assigned to the Hose Company to a work site outside the area served by the Hose Company. When Faust disagreed with plaintiff's position on the use of the vehicle, plaintiff told Faust that he would notify Township officials about Faust's use of the vehicle.

Plaintiff and Faust disagree about what else, if anything, was said during the second phone call. Specifically, Faust claims that plaintiff threatened to "get" him. Plaintiff denies ever having threatened Faust. It is not disputed, however, that at 9:30 a.m. that morning Faust telephoned

the Clinton Township Police Department to report that plaintiff had threatened him during a phone conversation. That same day, plaintiff wrote a letter to the Mayor and Council of the Township of Clinton protesting Faust's use of the Township-owned vehicle assigned to the Hose Company.

A few days later, plaintiff wrote a second letter to the Mayor and Council to inform them that remodeling and electrical work had been performed at the firehouse without first obtaining proper building or electrical permits. On that same date, plaintiff also contacted Faust's supervisor at the Continental Insurance Company and informed him that furniture bearing the insurance company's name was being used at the firehouse. Plaintiff also telephoned the police and inspectors for the United States Postal Service to report that a canvas mail bag was being used to store the Hose Company's baseball equipment. Faust also asserts that, on that same day, plaintiff came to the firehouse and threatened him saying: "You won't always be with your friends, some day you'll be alone."

One week later, plaintiff reported to the police that "he had been confidentially informed that there [was] the distinct probability" that furniture at the firehouse had been stolen from the Continental Insurance Company. The next day, plaintiff wrote a third letter to the Mayor and Council detailing his disagreement with the Hose Company's position on the street-closure issue. Plaintiff asserted that Faust's letter on behalf of the Hose Company was "riddled with supposition & error" and expressed his "hope for the sake of all of Clinton Twp. that … Faust's 'letter of cheap excuses' [did] not exemplify the leadership & quality of the [Hose Company]."

In early May, plaintiff was informally advised by persons employed at Clinton Town Hall that the other members of the Hose Company were about to expel him. Plaintiff contacted several Hose Company members and attempted, unsuccessfully, to find out the reasons for his anticipated expulsion. During that same time frame, twenty-one members of the Hose Company signed an "Application for Removal or Expulsion" of plaintiff. The application stated: "This charge is brought against you for conduct unbecoming a member, by threating [sic] the Chief of the Fire Department and also devulging [sic] transactions of the Company to the Mayor and Council." Plaintiff was not sent a copy of this Application.

On May 25, 1988, plaintiff received a letter from the Hose Company stating that an application for his expulsion had been signed by members of the company pursuant to Article X of the Hose Company's constitution. The letter also stated that the application for expulsion would be discussed and voted upon at the regular monthly membership meeting on June 1, 1988. The letter did not state the charges against plaintiff.

When he arrived at the June 1st meeting, plaintiff was orally informed that his expulsion was sought for two reasons. First, that he had threatened Chief Faust during an April 28, 1988 phone conversation. Second, that he had disclosed company business by reporting to the Mayor and Council that renovations were made to the firehouse without the required permits. Plaintiff was permitted to read the application for his expulsion which set forth these same two reasons. However, plaintiff was not given a copy of the Application.

Plaintiff was then given the opportunity to address these charges. Plaintiff flatly denied having threatened Faust. He admitted notifying the Mayor and Council that renovations had been made without permits. Nevertheless, he argued that, because the Township owned the firehouse, such matters were not simply the Hose Company's private business. After plaintiff addressed the charges, a vote was taken. By a vote of twenty-four to four, plaintiff was expelled from the Hose Company.

Plaintiff sought to appeal his expulsion to the Mayor and Township Council. The Mayor and Council initially agreed to provide a forum for plaintiff's appeal. Subsequently, however, the Mayor and Council concluded that, under the constitution and

bylaws of the Hose Company that were in effect at the time plaintiff was expelled, they had no authority to hear the appeal. On January 22, 1990, plaintiff filed the present lawsuit alleging that Faust, the Hose Company and the Township of Clinton had violated his rights under the federal constitution and under the state constitution and state law. In his complaint, plaintiff sought, *inter alia*, reinstatement, a declaratory judgment that the provision under which he was expelled was overbroad and monetary damages. Prior to the filing of cross-motions for summary judgment, plaintiff abandoned all monetary claims.[1]

## II. DISCUSSION

### A. Qualified Immunity of Faust

■ Defendant Faust argues that he "is entitled to judgment dismissing all claims against him individually based on the defense of qualified immunity." The district court's opinion did not address this issue. However, if a defendant asserts the affirmative defense of qualified immunity the court must determine as a threshold matter whether the defendant is entitled to that defense. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Qualified immunity "protects officials from unexpected liability by shielding them from *monetary* damages if their conduct conforms to that of the reasonable actor." *Hicks v. Feeney*, 770 F.2d 375, 379 (3d Cir.1985) (emphasis added); *see Guercio v. Brody*, 911 F.2d 1179, 1189 (6th Cir.1990) ("[T]he defense of qualified immunity protects officials only from suit for *monetary*

damages."), *cert. denied*, — U.S. —, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991). Because plaintiff seeks no monetary damages, Faust's qualified immunity defense is moot.

### B. State Action

Plaintiff's primary arguments are based upon his assertion that his expulsion from the Hose Company violated his rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff also argues that he is entitled to a remedy under 42 U.S.C. § 1983. As a threshold matter, these arguments would fail unless plaintiff established that his expulsion involved state action. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 265, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964) (recognizing that state action is required to trigger First Amendment); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982) (recognizing that Fourteenth Amendment and section 1983 have "identical" requirements of state action). Plaintiff argues, and the district court concluded, that the Hose Company is a state actor. For purposes of our analysis we assume, without deciding, that the actions of the Hose Company constitute the requisite state action.

### C. First Amendment

Plaintiff raises two First Amendment challenges to his expulsion. First, he alleges that he was expelled in retaliation for exercising his right to free expression. Second, he alleges that a provision in the Hose Company Constitution under which

---

1. During plaintiff's deposition, counsel for Faust and the Hose Company, Ms. Jacob, inquired as what damages were sought by plaintiff. Plaintiff then requested and was granted a short recess to confer with his counsel, Mr. Miller, after which the following colloquy occurred:

    Mr. Miller: With respect to damages, I indicated at the last deposition that we're not claiming any monetary damages for mental suffering or any of those other items which we originally indicated. We've abandoned that claim.

    Ms. Jacob: All right, fine. Are we just then left with the reinstatement claim?

    Mr. Miller: That's right.

    Ms. Jacob: All right. No monetary damage is sought at all?

    Mr. Miller: Well—

    Ms. Jacob: I understand you're reserving on the benefits thing, although I understand—

    Mr. Miller: We're not claiming any mental suffering or that he suffered any monetary damages, that's right, either physical or mental or a loss of income or anything of that nature. That's correct. We're not claiming any of those things.

    At oral argument, counsel for plaintiff reiterated that plaintiff had abandoned all monetary claims.

he was expelled is overbroad. We address these arguments in turn.

### 1. Retaliatory Expulsion For Engaging In Protected Speech

We must first determine whether plaintiff's interest in his membership in the Hose Company was sufficient to warrant First Amendment scrutiny. The Supreme Court has stated: "[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). At this juncture, we need not, and do not, conclude that plaintiff was an "employee" of the Hose Company or the Township. Rather, we assume, without deciding, that "the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny." *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir.1992).

■ Next, we must determine whether plaintiff's speech that formed the basis for his expulsion was protected by the First Amendment. If not, this claim must fail. For this purpose we again employ an analysis typically used in a government employment context—the *Pickering* balancing test. *See Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In *Pickering*, the Supreme Court stated that government employees "may [not] constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest...." *Id.* at 568, 88 S.Ct. at 1734. We believe that similar First Amendment concerns would apply in a volunteer context.

■ The determination of whether speech is protected pursuant to the *Pickering* balancing test is one of law. *Johnson v. Lincoln Univ. of Commw. Sys. of High-*

*er Educ.*, 776 F.2d 443, 453 (3d Cir.1985). Application of *Pickering* involves a two-part analysis. *See, e.g., O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061–62 (3d Cir. 1989); *Czurlanis v. Albanese*, 721 F.2d 98, 103–107 (3d Cir.1983). First, we must determine whether the speech involves a matter of public concern. Second, we must balance the speaker's interests in engaging in the speech and the public's interests in hearing the speech against the organization's interests in promoting the efficiency of services it performs through its employees or, in this case, volunteers.

Defendants contend that the decision to expel plaintiff was based on two items of speech: (1) plaintiff's letter to the Mayor and Township Council asserting that remodeling work was done on the firehouse without proper permits; and (2) plaintiff's alleged threat to "get" Faust during the second telephone conversation on April 28, 1988. We note that plaintiff denies ever threatening Faust. This disputed issue of material fact cannot be resolved against plaintiff on this appeal from a grant of summary judgment. Thus, we will assume no threat in the remainder of our analysis.

#### a. Public Concern Analysis

Speech may involve public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). In determining whether speech is on a matter of public concern, we must consider "the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1689–90; *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir.1989) (quoting *Connick*). In addition, the speaker's motivation is relevant to the extent that it indicates whether the speaker is speaking as "a citizen upon matters of public concern" or as a volunteer "upon matters only of personal interest." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1689; *see also Zamboni v. Stamler*, 847 F.2d 73, 77–78 (3d Cir.) (recognizing that speaker's motivation is relevant to, but not determinative of,

whether speech is on matter of public concern), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988); *Czurlanis*, 721 F.2d at 103–04, 104 n. 5 (same).

We turn to the content, form and context of plaintiff's speech. On its face, the content of plaintiff's speech—whether the Hose Company remodeled the firehouse without obtaining proper permits—implicates public concern.[2] The public might be concerned that the remodeling, if not done properly, could result in damage to the municipal building where the firehouse was located. The public might also be concerned that members of the Hose Company could have violated Township ordinances. We note, however, that the content of plaintiff's speech is not determinative of whether the speech involves public concern. *See Connick*, 461 U.S. at 148, n. 8, 103 S.Ct. at 1691 n. 8 (recognizing that speech "does not attain th[e] status [of public concern] because its subject matter could, in different circumstances, have been the topic of communication to the public that might have been of general interest"). We turn to the context of plaintiff's speech.

The context of plaintiff's speech includes a consideration of "the whole record." *Id.* at 148, 103 S.Ct. at 1691. As the district court recognized, "[p]laintiff knew about the remodeling and electrical work for sometime, but chose not to inform the Township council about the lack of permits until after plaintiff's dispute arose with Chief Faust." *Versarge v. Township of Clinton*, Civ. No. 90–257(CSF), 1991 WL 247611, at *7 (D.N.J. Nov. 18, 1991). In his deposition, plaintiff offered no reason for his delay in reporting the alleged infractions. Thus, the fact that plaintiff waited to write the letter until shortly after his argument suggests that the speech was of less significant public concern under *Pick-*

*ering. See Connick*, 461 U.S. at 154, 103 S.Ct. at 1693 (recognizing as significant that speech "emerged after a … dispute" between plaintiff and defendant). We turn to a consideration of plaintiff's motivation.

The law in this circuit is that "motivation is 'merely one factor to be considered, but [is] not necessarily controlling, in assessing the character of [the employee's] speech.'" *Zamboni v. Stamler*, 847 F.2d 73, 78 (3d Cir.) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir.1988)), *cert. denied*, 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988). The district court concluded that plaintiff was motivated by a "personal grudge" against Faust and the Hose Company. *Versarge*, 1991 WL 247611, at *7. The context of plaintiff's speech supports this conclusion. In addition, the record contains affidavits from other volunteer firefighters attesting that, shortly before writing his letter on the remodeling, plaintiff told them that he was going to make trouble for the Hose Company because he was angry about the Hose Company's position on the street-closure issue.

In his letter on the remodeling, plaintiff asserted that he was motivated by concerns about whether the renovations might affect insurance coverage. *See supra* note 2. Later, during his deposition, plaintiff claimed that he was motivated by a desire "to ensure the safety of the firemen and the township employees." Despite plaintiff's claims to the contrary, we agree with the district court's conclusion that plaintiff was motivated by a "personal grudge." Plaintiff's mere assertion that his speech was motivated by insurance or safety concerns is insufficient to create a genuine issue of material fact as to plaintiff's motivation in view of the overwhelming evidence to the contrary. *See Anderson v.*

---

2. Plaintiff's letter read as follows:
   Dear Mayor & Council,
      This is to inform you that the Annandale Hose Co. has completed extensive remodeling & electrical work in the firehouse onthe [sic] 2nd floor of the Municipal Building on West St. The remodeling included adding sseveral [sic] walls & doorways making additional rooms & adrop [sic] ceiling. The electrical work included several electrical outlets, ceil-

ing lights & etc. for which an electrical pannel [sic] breaker box was installed in one of the new walls. To this date no building or electrical permits wereissued [sic] for this work. How does this affict [sic] the insurance on the Municipal Bldg. for uninspected electrical work?
      Sincerely,
      s/ Paul Versarge

*Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986).

In view of the foregoing factors, we conclude that plaintiff's speech involved, at most, limited public concern under *Pickering*. Having answered this threshold inquiry, we turn to the balancing requirement.

### b. Balancing of Interests Analysis

We have already concluded, as did the district court, that "[p]laintiff was more interested with 'getting back' and giving his fellow firefighters 'a hard time' than he was with the proper operation of the [Hose] Company." *Versarge*, 1991 WL 247611, at *7. We accord little weight to such an interest. On plaintiff's side of the balance, we must also consider the interests of the public in plaintiff's speech. *See O'Donnell v. Yanchulis,* 875 F.2d 1059, 1061 (3d Cir.1989) ("With regard to the employee's interest, we must also take into account the public's interest."). The public has an interest in "[f]ree and unhindered debate on matters of public importance." *Pickering v. Board of Educ.*, 391 U.S. 563, 573, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968). "The public [also] has a significant interest in encouraging legitimate whistle-blowing so that it may receive and evaluate information concerning the alleged abuses of ... public officials." *O'Donnell*, 875 F.2d at 1062.

On the other side of the balance, we must weigh the Hose Company's interests. Those interests include whether the speech: (1) "impair[ed] discipline by superiors"; (2) "impair[ed] ... harmony among co-workers"; (3) "ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary"; (4) "impede[d] the performance of the speaker's duties"; or (5) "interfere[d] with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). These interests are referred to collectively as "disruption."

It is certainly true that the mere existence of some disruption would not end our inquiry. Some disruption may be expected in any case where a government employee or volunteer has broken rank. *See Czurlanis*, 721 F.2d at 105. Disruption is simply a weight on the scales which must be balanced against the interests of plaintiff and the public in plaintiff's speech. *See, e.g., O'Donnell*, 875 F.2d at 1062 ("We say only that [disruption] may be overbalanced by first amendment interests."); *Sprague v. Fitzpatrick*, 546 F.2d 560, 566 (3d Cir. 1976) (Seitz, J., concurring) (concurring separately to note his understanding that "the majority is not holding, in effect, that the disruptive factor tips the scales in all such cases"), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977).

We note, however, that the context in which the disruption occurs is an important consideration "in determining whether speech that actually touches upon a matter of public concern is, in fact, protected activity." *Johnson v. Lincoln Univ. of Commw. Sys. of Higher Educ.*, 776 F.2d 443, 453 (3d Cir.1985). In addition, where close working relationships are essential and where the speech does not involve matters of significant public concern, the organization need not wait for the full disruptive impact before taking action. *Compare Connick*, 461 U.S. at 152, 103 S.Ct. at 1692 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.") *with Zamboni*, 847 F.2d at 78 (recognizing that actual disruption must be shown where speech involves significant public concern).

Undisputed evidence in the record reveals that plaintiff's speech created major disruption at the Hose Company. Although, at his deposition, plaintiff stated that he was not concerned that his speech would have negative repercussions, he conceded that, "depending on the people" involved, his letter on the remodeling could have had a negative effect on his relationships with other Hose Company members. In a police report filed the day after plaintiff wrote his letter, the police investigator noted: "[T]here is extreme malcontent be-

tween Paul Versarge and various members of Annandale Hose Company." [3] Subsequently, twenty-one members of the Hose Company signed an application for plaintiff's expulsion. Later, twenty-four members of the Hose Company voted to expel plaintiff. In contrast, only four members of the Hose Company did not vote to expel plaintiff. In contrast, only four members of the Hose Company did not vote to expel plaintiff. In addition, plaintiff asserts that, at a later date, twenty-five to thirty Hose Company members attended a Town Council meeting to voice their opposition to his reinstatement. Further, several volunteer firefighters have submitted affidavits attesting to their personal distrust of plaintiff and asserting that their feelings are representative of the Hose Company membership as a whole.

Plaintiff does not offer any evidence that would suffice to create a genuine issue of material fact as to the existence of major disruption. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986). In fact, plaintiff's admitted concern that he might be unable to receive an impartial hearing before the Hose Company membership is consistent with a conclusion of disruption at the summary judgment stage.[4]

We note that the context of this disruption is a volunteer fire department. As the district court recognized, "[w]hen lives may be at stake in a fire, an *esprit de corps* is essential to the success of the joint endeavor. Carping criticism and abrasive conduct have no place in a small organization that depends upon common loyalty—'harmony among coworkers.'" *Versarge*, 1991 WL 247611, at *6 (quoting *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 26 (2d Cir.1979) (quoting *Pickering*, 391 U.S. at 570, 88 S.Ct. at 1735)); *see also Bickel v. Burkhart*, 632 F.2d 1251, 1257 (5th Cir.1980) ("Because of the nature of fire fighting, and its high stakes, operational efficiency and harmony among co-workers are critical.").

The undisputed record clearly supports the inference that plaintiff's speech impaired harmony among the volunteer firefighters and impacted detrimentally on close working relationships where, as here, personal loyalty and confidence are necessary. We recognize that some portion of this major disruption was undoubtedly caused by items of plaintiff's speech that were not given as grounds for his expulsion.[5] Nevertheless, we conclude that sufficient disruption is directly attributable to the letter concerning the remodeling to outweigh the limited interests of plaintiff and the public in that speech. In so concluding, we do not wish to denigrate the value of "speech" driven by more significant public concerns. *See Connick*, 461 U.S. at 152, 103 S.Ct. at 1692 ("We caution that a stronger showing [of disruption] may be necessary if the employee's speech more substantially involved matters of public concern.").

We recognize that *Pickering* mandates "a particularized examination of each activity for which the protection of the First Amendment is claimed." *Lincoln University*, 776 F.2d at 451. Therefore, assuming we were to read plaintiff's complaint as

---

**3.** This police report was filed after plaintiff contacted the police and postal inspectors to report that the Hose Company was using a canvas mail bag to store baseball equipment. Plaintiff's speech concerning the mail bag was not cited as a reason for plaintiff's expulsion and, thus, is not relevant to our analysis here.

**4.** In their brief, defendants Faust and the Hose Company discuss numerous letters written by plaintiff after his expulsion to the Mayor and Township Council criticizing the Hose Company. We have not relied on these post-expulsion letters in concluding that major disruption was caused.

**5.** Some portion of the major disruption is attributable to: (1) plaintiff's letter to the Mayor and Council advocating the street closing and criticizing the Hose Company's position on that issue; (2) plaintiff's letter to the Mayor and Council criticizing Faust's use of a Township-owned vehicle; (3) plaintiff's notification of representatives of Continental Insurance Company that furniture bearing that company's name was in use at the firehouse; (4) plaintiff's report to police that furniture in use at the firehouse might have been stolen from the Continental Insurance Company; and (5) plaintiff's conversations with police and postal inspectors regarding the Hose Company's use of a canvas mail bag to store baseball equipment.

alleging that the stated grounds for his expulsion were pretextual, we would not simply confine our inquiry to the speech the Hose Company claims motivated plaintiff's expulsion. *See id.* at 453. Instead, we would also consider other speech that *plaintiff* claims led to his expulsion. *See supra* note 5. Nevertheless, given the major disruption caused by the speech taken *in toto*, our result would be unchanged.

Therefore, on the basis of undisputed evidence, we conclude, as did the district court, that the interests of the Hose Company outweigh the limited interests of plaintiff and the public in plaintiff's speech. Accordingly, plaintiff's speech is not protected by the First Amendment.[6]

### 2. Overbreadth

■ We have concluded that plaintiff's speech was not protected by the First Amendment. Accordingly, plaintiff is not in a position to argue that the provision in the Hose Company constitution under which he was expelled is unconstitutionally overbroad as applied to his speech.[7] Nevertheless, plaintiff seeks to challenge that provision as overbroad on its face. A facial overbreadth challenge allows a plaintiff "to benefit from the [provision's] unlawful application to *someone else.*" *Board of Trustees v. Fox*, 492 U.S. 469, 483, 109 S.Ct. 3028, 3036, 106 L.Ed.2d 388 (1989).

The remedies sought by plaintiff for this alleged constitutional violation are reinstatement and a declaratory judgment that the provision is overbroad. Plaintiff seeks no monetary relief. *See supra,* note 1.

Reinstatement is an equitable remedy under 42 U.S.C. § 1983. *See Skehan v. Board of Trustees of Bloomsburg State College*, 436 F.Supp. 657, 664 (M.D.Pa. 1977) ("Prospective reinstatement is an equitable remedy. The requirements of the law of equitable remedies clearly applies [sic] to § 1983.), *aff'd in part, rev'd in part on other grounds*, 590 F.2d 470 (3d Cir.1978). Nevertheless, reinstatement is not available in all cases. "[A] court may deny reinstatement 'when, for example, animosity between the parties makes such a remedy impracticable.' " *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 899 (3d Cir.1993) (quoting *Ellis v. Ringgold Sch. Dist.*, 832 F.2d 27, 30 (3d Cir.1987)).

■ If plaintiff's speech has caused such animosity and disruption that reinstatement is no longer a practical remedy, then plaintiff has not "suffered [an] actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (per curiam). If such is the case, we would lack jurisdiction over these claims because there would be no "actual case[ ] or controvers[y]." *Id.* "The requirement of 'actual injury redressable by the court'.... tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conductive to a realistic appreciation of the consequences of judi-

---

**6.** We note that defendants may dispute the veracity or accuracy of plaintiff's contention that "extensive remodeling & electrical work" was done on the firehouse and that "[t]he remodeling included adding sseveral [sic] walls & doorways making additional rooms & adrop [sic] ceiling." In light of our resolution of the *Pickering* balance, we need not consider whether plaintiff's speech involved "false statements knowingly or recklessly made." *Pickering v. Board of Educ.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968).

**7.** Article X, Section 3 of the Hose Company's constitution, under which plaintiff was expelled, states:

> Any member using insulting language to an officer in command, or be [sic] guilty of any conduct calculated to bring disgrace on the Company, or divulge [sic] any transactions or business of same to persons not members of the Company, or appearing at a fire, or Company meeting intoxicated, shall be liable to expulsion.

The district court implicitly concluded that the "new" Hose Company constitution containing this provision was in effect on the date of plaintiff's discharge. We agree. To the extent that plaintiff argues that the "old" Rules and Regulations were in effect, plaintiff has failed to raise a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986).

cial action." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)). Furthermore, the fact "[t]hat the dispute between the parties was very much alive when suit was filed ... cannot substitute for the actual case or controversy that an exercise of this [c]ourt's jurisdiction requires." *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 600, 98 L.Ed.2d 686 (1988). We turn to the issue of whether reinstatement is an available remedy because the resolution of this issue against plaintiff would moot plaintiff's claim to the extent that plaintiff seeks reinstatement.

In the preceding section we concluded that plaintiff's pre-expulsion speech, considered *in toto*, caused major disruption. We also noted that the context of plaintiff's speech was a volunteer fire department where "operational efficiency and harmony among co-workers are critical." *Bickel v. Burkhart*, 632 F.2d 1251, 1257 (5th Cir. 1980). We conclude that the previously discussed evidence establishes that such animosity presently exists between plaintiff and the members of the Hose Company that reinstatement is not an available remedy. If additional evidence were deemed necessary, the undisputed record also indicates that, after his expulsion, plaintiff engaged in numerous additional items of speech which could reasonably have been expected to further disrupt his relationships with other volunteer firefighters.

For example, after his expulsion, plaintiff wrote to the Mayor and Council enclosing a photocopy of a newspaper article and accompanying photograph concerning a car accident to which the Hose Company responded. Plaintiff alleged that the volunteer firemen shown in the photograph were not wearing proper safety equipment. Subsequently, plaintiff wrote to the Mayor and Council to advise that two Hose Company vehicles had been involved in a minor accident one year earlier. Plaintiff alleged that the accident had never been reported to Mayor and Council or to the Hose Com-

pany's insurance carrier. Later, plaintiff wrote to the Mayor and Council alleging that the telephones at the firehouse were being used for personal calls and that members of the Hose Company were using Hose Company tools and equipment to repair personal vehicles. Still later, plaintiff wrote to the Mayor and Council to question the advisability of permitting the Hose Company to install and use exercise equipment in its office on municipal property.

We conclude that, because of the great animosity between plaintiff and the other volunteer firefighters, reinstatement is not a remedy available to plaintiff. Plaintiff's alleged injury could not be redressed by reinstatement even if we were to conclude that the Hose Company's actions violated the First Amendment. Thus, we lack jurisdiction to consider this claim because "no resolution of the [claim] can redress [plaintiff's] asserted grievance." *Iron Arrow*, 464 U.S. at 70, 104 S.Ct. at 374; *see Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895) (recognizing that when "an event occurs which renders it impossible for th[e] court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal").

■ In addition to the remedy of reinstatement, plaintiff also seeks a declaratory judgment that the provision under which he was expelled is overbroad. It is highly unlikely, however, that plaintiff will ever again be a member of the Hose Company and, therefore, it is even less likely that the challenged provision could ever be applied against him in the future. The Supreme Court instructs us that such cases lack a controversy of "sufficient immediacy and reality" to permit the issuance of a declaratory judgment under 28 U.S.C. § 2201. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)); *see also Brown v. Fauver*, 819 F.2d 395, 399–400 (3d Cir.1987). We lack the power to issue a declaratory judgment in a case such as this

even if the infirmity did not exist when the action was initiated. *Golden,* 394 U.S. at 108, 89 S.Ct. at 959. Consequently, plaintiff's request for declaratory judgment must be rejected. "We accordingly intimate no view upon the correctness of the District Court's holding as to the constitutionality of the [provision]." *Id.*

### D. Due Process

#### 1. Plaintiff's Interest In Volunteer Membership

Plaintiff's primary due process argument, in its simplest form, is that he had a property interest in benefits received through his membership in the Hose Company and was denied procedural due process because he was not given adequate prior notice of the charges against him before the hearing at which he was expelled.

Plaintiff acknowledges that he did not receive monetary compensation for his services, but argues that we should conclude that he possessed a property interest in other benefits he obtained through his position as a volunteer firefighter. In his deposition, plaintiff claimed that his volunteer position afforded him: (1) training; (2) workers' compensation; and (3) access to the firehouse as a social area.

■ We find little merit in plaintiff's reliance on training and workers' compensation as benefits. The utility and value of each of these supposed benefits is inextricably tied to the position from which plaintiff was expelled. Thus, there is no benefit from workers' compensation unless one is injured while working as a volunteer firefighter. Similarly, there is no benefit from training as a firefighter unless one is working as a volunteer firefighter. We also find little merit in plaintiff's reliance on the use of a firehouse as a social area.

In his Reply Brief on this appeal, plaintiff claims that he was also deprived of benefits obtained through the "state-supported Firemen's Relief Fund." Plaintiff's counsel made a similar claim at oral argument on appeal. Nevertheless, we have repeatedly held that unsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir.1989) ("[S]tatements made in briefs are not evidence of the facts asserted."); *Jersey Cent. Power & Light Co. v. Township of Lacey,* 772 F.2d 1103, 1109–10 (3d Cir.1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). We are directed to no evidence in the record, and find none, that would sufficiently substantiate this claim so as to create a genuine issue of material fact.[8]

The Supreme Court has stated that the requirements of due process do not apply when the property interest involved is "de minimis." *See Goss v. Lopez,* 419 U.S. 565, 576, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). The district court did not discuss whether any property interest plaintiff might have possessed was de minimis because it concluded that, even if plaintiff had some property interest, he received all the process he was due. On the basis of the record on appeal we conclude that the benefits received by plaintiff were de minimis. Accordingly, plaintiff was not entitled to the constitutional requirements of due process.

#### 2. Plaintiff's Interest In Reputation

■ Plaintiff also claims that defendants unconstitutionally infringed on "lib-

---

**8.** We find no reference in the record to any retirement home or burial benefits. During his deposition, plaintiff was asked whether he was claiming that he had been deprived of benefits in the "New Jersey Firemen's Equity Program or something like that." Plaintiff responded that he "believe[d]" that his benefits in that program had been preserved. At the conclusion of his deposition, plaintiff was asked whether he

was claiming that he lost any benefits received through "the New Jersey benefits group." Plaintiff's counsel responded: "We haven't decided that yet. We'll let you know." It is far from apparent that these vague references relate to the burial and retirement benefits plaintiff now claims. In any event, such amorphous references are insufficient to create a genuine issue of material fact on summary judgment.

erty and property interests in his individual reputation and in the honor and integrity of his good name...." The remedy for such an infringement would be a name clearing hearing. *See Owen v. City of Independence*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980). Contrary to plaintiff's contention, however, "reputation alone is not an interest protected by the Due Process Clause." *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir.1989); *see Paul v. Davis*, 424 U.S. 693, 701–12, 96 S.Ct. 1155, 1160–65, 47 L.Ed.2d 405 (1976).

Courts that have addressed the constitutional requirements for a protected interest in reputation in a volunteer context have refused to find such a protected interest where the plaintiff has failed to show lost opportunity for employment. *See Jungels v. Pierce*, 825 F.2d 1127, 1131 (7th Cir.1987) (finding that complaint failed to state a cause of action for deprivation of a liberty interest because "[the] principle does not reach a case where the employee is fired from a part-time, honorific job while retaining the employment that gives him his livelihood"); *Shands v. City of Kennett*, 789 F.Supp. 989, 995 (E.D.Mo.1992) (finding that no liberty interest is implicated in context of volunteer fire department where plaintiffs failed to establish that their terminations caused them "economic damage or lost ... opportunity for employment"); *see also Kennedy v. McCarty*, 778 F.Supp. 1465, 1477–78 (S.D.Ind.1991) (finding that reserve police officer failed to establish deprivation of a liberty interest by termination where he did not show that the termination affected his primary means of employment). *But cf. Thornton v. Barnes*, 890 F.2d 1380, 1388 (7th Cir.1989) (majority opinion) (suggesting that, although compensation is relevant consideration, it should not be determinative of existence of property interest). Similarly, we have stated: "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Robb v. City of Phi-*

la., 733 F.2d 286, 294 (3d Cir.1984). Plaintiff, because of a disability, was not employed for several years prior to his expulsion. In addition, plaintiff has not asserted that his future employment opportunities have been adversely affected by his expulsion. We therefore conclude that plaintiff has failed to establish the deprivation of a protected interest in his reputation.

### 3. Plaintiff's Interest in Free Speech

Finally, plaintiff claims that defendants violated a liberty interest in his First Amendment right to freedom of speech. In his complaint, plaintiff alleges that this deprivation occurred when defendants "den[ied] Plaintiff his right to speak." In his deposition, however, plaintiff candidly acknowledged that he was given the opportunity to speak to the membership of the Hose Company and to address the charges against him before the vote was taken on his expulsion. Thus, we conclude there is no merit in this claim.

### E. State Law Claims

In the district court, plaintiff also argued that he was wrongfully discharged in violation of state public policy.[9] Under the *Pierce* doctrine, the New Jersey Supreme Court recognizes that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505, 512 (1980). The district court granted summary judgment for defendants on plaintiff's wrongful discharge claim after concluding that "New Jersey courts have not expanded this principle to include expulsion from volunteer organizations." *Versarge v. Township of Clinton*, Civ. No. 90–257(CSF), 1991 WL 247611, at *11 (D.N.J. Nov. 18, 1991). Although plaintiff purports to appeal this claim, he does not attack this conclusion by the district court. Accordingly, we affirm the district court's order disposing of this claim.

9. Plaintiff also raised claims in the district court under the New Jersey Constitution. They were decided adversely to plaintiff and are not pressed on appeal.

F. Liability of the Township

 Although the final judgment was in favor of the Township, it argues that the district court erred in concluding at the summary judgment stage that "[t]he Township of Clinton may be held liable for plaintiff's expulsion in accordance with the [Hose] Company's constitution." *Versarge v. Township of Clinton*, Civ. No. 90–257(CSF), 1991 WL 247611, at *5 (D.N.J. Nov. 18, 1991). However, the Township did not cross-appeal and, therefore, lacks standing to raise that precise issue. *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924) ("[A] party who does not [cross-]appeal.... may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary ... *to correct an error*...." (emphasis added)); *Scott v. University of Del.*, 601 F.2d 76, 82 n. 12 (3d Cir.) (quoting *American Railway*), cert. den., 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). To the extent that plaintiff asserts a direct claim against the Township, the short answer is that plaintiff has withdrawn his monetary claim and we have determined that reinstatement is not an available remedy. Thus, the direct claim against the Township was also properly dismissed.

III. CONCLUSION

We will affirm the district court's order granting defendants' motion for summary judgment and denying plaintiff's cross-motion for summary judgment.