850 F.2d 152
 12 Fed.R.Serv.3d 442
 Roy HICKS, Appellant,
v.
Robert C. FEENEY, individually and in his official capacity
as Hospital Director of the Delaware State Hospital, a
facility in the Division of Mental Health, Department of
Health and Social Services State of Delaware, Appellee.
 No. 87-3527.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6)
 Jan. 5, 1988.
Resubmitted before original panel May 26, 1988.
Decided June 22, 1988.
Rehearing and Rehearing In Banc Denied July 19, 1988.
 
 Joseph M. Bernstein, Wilmington, Del., for appellant.
 Marcia Rees, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for appellee.
 Before SEITZ, HUTCHINSON and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 
 1
 This case involves the dismissal of a plaintiff's action for failure to comply with a district court's discovery order. The sanction is harsh. Nevertheless, considering appellant's willful refusal to afford appellee discovery relevant, at the least, to the undecided issue of appropriate relief, the district court did not abuse its discretion. We will therefore affirm.
 
 
 2
 On November 18, 1982 the Family Court of the State of Delaware found plaintiff Roy Hicks (Hicks) guilty of criminal contempt. The court sentenced Hicks to thirty days in jail, but suspended the sentence in favor of a one year probation. As a condition of the probation, Hicks was sent to the Delaware State Hospital (DSH) for a seventy-two-hour evaluation, and for continued hospitalization, if recommended by DSH, "as may be permitted by law, unless sooner discharged according to law." Hicks was not released until January 12, 1983, fifty-four days after his admission.[1]
 
 
 3
 Hicks brought a 42 U.S.C.A. Sec. 1983 (West 1981) civil rights action in district court against Robert Feeney (Feeney), director of DSH. Hicks sought declaratory and injunctive relief against Feeney in his official capacity and compensatory damages against him as an individual. Both parties moved for summary judgment. The district court held that although Hicks's liberty interest was violated by his confinement at DSH, adequate post-deprivation remedies existed to remedy it. Therefore, his right to procedural due process was not violated. Hicks v. Feeney, 596 F.Supp. 1504, 1512 (D.Del.1984) (Hicks I ), vacated, 770 F.2d 375 (3d Cir.1985). The district court also found that Hicks's substantive due process rights were not violated. Id. at 1513. Finally, the district court found that because Hicks's rights were not "clearly established" at the time of the violation, Feeney was entitled to qualified immunity. Id. at 1515.
 
 
 4
 On appeal, this Court held that the district court erred in applying the post-deprivation remedy exception to Section 1983 violations of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Hicks II, 770 F.2d at 379. We held DSH's commitment procedures were an established state procedure rather than the random and unauthorized act of a state officer. Id. at 378-79. Under Parratt, an established state procedure requires a pre-deprivation hearing. We also considered Feeney's claim of qualified immunity and found that the district court misapplied the factual correspondence standard of People of Three Mile Island v. Nuclear Regulatory Comm'rs, 747 F.2d 139, 144 (3d Cir.1984). Hicks II, 770 F.2d at 379-80. We therefore vacated the district court's order granting qualified immunity to Feeney and instructed the court to "focus on whether it was clearly established that Hicks could be involuntarily confined at DSH after the initial 72-hour period ordered by the family court judge." Id. at 380. If it were clearly established that this confinement violated Hicks's constitutional rights, then Feeney does not have qualified immunity. Id. We also instructed the district court to consider whether Delaware's Involuntary Commitment Act[2] creates a liberty interest that could form the basis of a Section 1983 action. Id. at 380 n. 4.
 
 
 5
 On remand, Hicks moved for summary judgment. The district court entered an order setting a briefing schedule and allowing Feeney to take further discovery.
 
 
 6
 Hicks was deposed on January 28, 1986. After approximately forty minutes, he refused to answer any more questions.[3] After a one-hour recess, he did not return to the deposition. The deposition was rescheduled for February 14, 1986. Hicks failed to appear. Feeney filed a Motion to Compel Deposition of Plaintiff. While that motion was pending, Feeney rescheduled the deposition to April 8, 1986. Hicks did not appear. On July 9, 1986 Joseph Bernstein, Esq., counsel for Hicks, sent the district judge a letter explaining his client's position. He stated that he had been in contact with Hicks at least five times, both before and after the various deposition dates. Hicks told Bernstein that "he did not want to discuss what he believed to be extremely private matters concerning what happened to him while he was confined at the Delaware State Hospital." App. at A-54. Bernstein informed Hicks of the possibility of the imposition of sanctions for failing to appear at the deposition. Hicks replied that "he valued his privacy concerning these matters more than any compensatory damages that the court might award" and that he would not appear at any future depositions. Id.
 
 
 7
 The district court ordered Hicks to appear at a deposition on July 29, 1986 and to pay costs for the previous depositions. The court warned that additional sanctions, including an outright dismissal, would be imposed if Hicks failed to appear. Hicks did not appear. In his Memorandum in Opposition to Defendant's Motion for Sanctions, Hicks recognized that his refusal to be deposed resulted in substantial prejudice to Feeney and was willing to waive his "actual" injury claims. App. at A-80. However, Hicks continued to press for presumed and punitive damages. App. at A-80-81 & n. 7. Hicks suggested that even a $1.00 award of nominal damages would be an alternative sanction to an outright dismissal. App. at A-80 n. 6. Nevertheless, the district court dismissed the case. Hicks appeals from the district court's final order. We have jurisdiction under 28 U.S.C.A. Sec. 1291 (West Supp.1987).
 
 
 8
 Hicks first argues that the district court exceeded its power under Federal Rules of Civil Procedure 37(b)(2) in dismissing the case for failing to comply with discovery orders. The court clearly has the power to dismiss the case as a sanction against a party who fails to obey an order regarding discovery. Fed.R.Civ.P. 37(b)(2)(C). The sanction must be specifically related to the particular claim at issue in the discovery order. Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707-08, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). The trial court has discretion over which sanctions to impose and "may make such orders in regard to the failure as are just." Fed.R.Civ.P. 37(b)(2).
 
 
 9
 Hicks argues, however, that the district court was limited in the sanctions it could apply because of our opinion in Hicks II. He claims Hicks II established Feeney's liability, leaving only the issue of monetary damages to be determined through discovery and trial. Reviewing Hicks II, we do not find such a holding. In Hicks II we held that the district court erred in applying the post-deprivation remedy exception to Section 1983 violations of Parratt v. Taylor, supra. This holding was based on a finding that DSH's court commitment procedure was not a "random and unauthorized act" but "an established state procedure that required a pre-deprivation hearing." Hicks II, 770 F.2d at 378-79. We made no findings as to whether a hearing took place and if not, why not. Certainly Hicks might have been able to shed light on why he did not have a hearing and why he was placed in a maximum security building. Feeney asked Hicks for this type of information during his deposition. App. at A-15-16, 32-34. Feeney contends that, without deposing Hicks, he cannot fully prepare a defense as to the issues of (1) whether his failure to follow constitutionally required procedure caused Hicks alleged damages; (2) whether Hicks would have remained at DSH even if the procedures had been followed; and (3) Hicks's actual damages. App. at A-72. We cannot summarily deny Feeney the opportunity to establish a defense.[4]
 
 
 10
 Hicks's second argument on appeal is that the district court abused its discretion in dismissing the case contrary to our guidelines in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir.1984). "In determining whether a District Court has abused its discretion in dismissing a complaint ... we will be guided by the manner in which the court balanced the Poulis factors and whether the record supports its findings." Ali v. Sims, 788 F.2d 954, 957 (3d Cir.1986).
 
 
 11
 In Poulis we set out the following factors for a district court to balance in deciding whether to dismiss a case:
 
 
 12
 (1) The extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
 
 
 13
 Poulis, 747 F.2d at 868 (emphasis in original). Not all of these factors need be met for a district court to find dismissal is warranted. A Rule 37(b)(2)(C) dismissal is a serious sanction. In certain cases, it is a necessary tool to punish parties who fail to comply with the discovery process and to deter future abuses. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976); Al Barnett & Son, Inc. v. Outboard Marine Corp., 611 F.2d 32, 35-36 (3d Cir.1979). This is such a case. See Kabbe v. Rotan Mosle, Inc., 752 F.2d 1083 (5th Cir.1985) (per curiam) (repeated willful failure of plaintiff to attend deposition warrants dismissal). Mindful of the fact that dismissal is a sanction of last resort, Poulis, 747 F.2d at 868, we will review the district court's balancing of the Poulis factors for abuse of discretion.
 
 
 14
 In this case Hicks failed to attend depositions, one in violation of the district court's order. Hicks attended approximately forty minutes of his deposition. After a brief recess, he failed to return to counsel's office. He failed to appear for two rescheduled depositions of which he had notice. He informed his attorney that he did not want to discuss "what he believed to be extremely private matters concerning what happened to him while he was confined at the Delaware State Hospital." App. at A-54. Hicks stated that he would not appear at any further depositions because "he valued his privacy concerning these matters more than any compensatory damages that the court might award." Id. On July 16, 1986 the district court ordered Hicks to appear at a deposition on July 29, 1986, warning that failure to do so would result in sanctions under Rule 37, including dismissal of the case.
 
 
 15
 Given these facts, we cannot find that the district court abused its discretion in dismissing the case. A remand would tell the district court to ignore Hicks's willful conduct and simply weigh the relative prejudices to the parties. Hicks was personally responsible for failing to attend the depositions. As evidenced by his communications with his attorney, his conduct was willful. Review of the record reveals no conduct by Feeney's counsel to intimidate or harass Hicks, which could give Hicks reason to refuse further questioning. Hicks failed to return to his initial ongoing deposition and to appear at three subsequent depositions, one by court order. Hicks admitted that Feeney has suffered substantial prejudice by Hicks's failure to appear at the depositions. Feeney has a right to establish the facts concerning Hicks's treatment at DSH and the events surrounding his confinement there. Although we sympathize with Hicks's reluctance to recount the facts surrounding his incarceration at DSH, he is the plaintiff and as such must prove his case, as well as give the defendant an opportunity to prepare against it. Cf. Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").
 
 
 16
 The district court considered alternative sanctions to the dismissal of this case. In its July 16, 1986 order it warned Hicks that it would impose sanctions for failing to appear at the court-ordered deposition and assessed attorney's fees against him for failing to attend the two prior depositions. In its decision to dismiss, the district court considered whether further discovery from Hicks was necessary to establish plaintiff's claims. It also considered alternatives, such as precluding Hicks from testifying about his mental status in November 1982, prohibiting evidence rebutting DSH's medical records on Hicks, and finding that Hicks suffered no actual injuries, thereby precluding compensatory damages. The court refused to allow the case to proceed on presumed and punitive damages without giving Feeney an opportunity to depose Hicks.
 
 
 17
 We agree with the district court that a lesser sanction was not appropriate. Without Hicks, this case becomes one for attorney's fees. Any argument that our statement in Hicks II that DSH's court commitment was "an established state procedure that required a pre-deprivation hearing" was a vindication of rights for purposes of attorney's fees under 42 U.S.C.A. Sec. 1988 (West 1981) is foreclosed by Hewitt v. Helms, --- U.S. ----, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (plaintiff must obtain some relief on merits to be considered "prevailing party" for attorney's fees under 42 U.S.C. Sec. 1988). While we support the award of attorney's fees to prevailing parties in civil rights litigation, we fail to see how Hicks has prevailed in this case. We cannot find any benefit which Hicks has obtained. Every attorney who represents a Section 1983 civil rights plaintiff runs the risk of losing their client before they can establish "prevailing party" status. Attorney Bernstein has obviously committed a great deal of time and effort to this case and should be commended for it. It is unfortunate that those efforts may be without material compensation. However, we are unable to say that the district court abused its discretion in dismissing the case after Hicks lost all interest in pursuing his rights before he obtained any relief.
 
 
 18
 For these reasons, we will affirm the district court's dismissal of the case.
 
 
 19
 ROSENN, Circuit Judge, dissenting.
 
 
 20
 I believe that the district court's imposition of the extreme sanction of dismissal constituted an abuse of discretion. As both majority and the parties recognize, the question of appropriate sanction is influenced, if not determined, by the content of our disposition in Hicks v. Feeney, 770 F.2d 375 (3d Cir.1975) (Hicks II ). Under the circumstances, an order precluding plaintiff from establishing both actual and punitive damages would have provided an appropriate Rule 37(b) sanction. Accordingly, I respectfully dissent.
 
 I.
 
 21
 On motion for summary judgment, the district court in Hicks v. Feeney, 596 F.Supp. 1504, 1508 (D.Del.1984) (Hicks I ), considered whether defendant's failure to comply with the Delaware Involuntary Commitment Statute, 16 Del Code Ann. ch. 50 (1983), resulted in a deprivation of plaintiff's constitutionally protected liberty interest in contravention of 42 U.S.C. Sec. 1983. Relying on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the court held that Hicks' right to procedural due process was not violated based upon the existence of adequate state post-deprivation remedies. Id. at 1512. In the alternative, the district court additionally held that Feeney was entitled to qualified immunity. Id. at 1515.
 
 
 22
 On appeal, we reasserted the district court's conclusion that absent the application of Parratt, DSH's confinement procedures violated Hicks' liberty interest:
 
 
 23
 Both sides agreed in open court that the procedure followed to commit Hicks violated a liberty interest protected by the fourteenth amendment. In light of Supreme Court precedent, any other position would be untenable. See Vitek v. Jones, 445 U.S. 480, 491 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980) (involuntary commitment from prison to a mental hospital requires due process protection) (other citations omitted).
 
 
 24
 Hicks, 770 F.2d at 377. However, we reversed the court's reliance on Parratt, observing that DSH's court commitment procedure constituted an established "state custom or usage" requiring a pre-deprivation hearing.[1] Id. at 378-79. Next, we asserted that the district court's holding entitling Feeney to qualified immunity was predicated upon an incorrect interpretation of People of Three Mile Island v. Nuclear Reg. Com'rs, 747 F.2d 139 (3d Cir.1984). We rejected the court's insistence upon a strict factual nexus between applicable precedent and the case before it in favor of "a more flexible approach requiring some factual correspondence and demanding that officials apply well developed legal principles to the instant case." Id. at 379-80. Accordingly, this court vacated the district court's order and remanded only the immunity claim for reconsideration. Id. at 380.
 
 
 25
 Remarkably, both the majority and the district court somehow conclude that Hicks II failed to establish, as a matter of law, whether the plaintiff was deprived of liberty without due process of law. In response to plaintiff's argument that absent resolution of the immunity question, Hicks II determined Feeney's liability, the majority observes:
 
 
 26
 Reviewing Hicks II, we do not find such a holding. In Hicks II we held that the district court erred in applying the post-deprivation remedy to section 1983 violations of Parratt v. Taylor, supra.
 
 
 27
 (Maj. op. at 155).
 
 
 28
 The majority wholly ignores the effect of our rejection of Parratt, which necessarily implies a violation of the due process clause. Parratt held that when officials act in a random and unauthorized fashion, the state is unable to anticipate the circumstances in which a property loss will occur, and therefore is unable to provide a hearing before the deprivation takes place. See Hicks, 770 F.2d at 378. Thus, the district court in Hicks I asserted that because DSH officers were not acting pursuant to established state custom or usage, the availability of post-deprivation state remedies satisfied the due process clause. Based upon our conclusion that Parratt was inapplicable, we held that the plaintiff was entitled to a pre-deprivation hearing before he could be involuntarily confined. Because the parties conceded that Hicks was not accorded the requisite hearing, our holding can only be interpreted to establish the deprivation of a constitutionally protected liberty interest.
 
 
 29
 My conclusion is additionally supported by our instruction to the district court to consider on remand only the issue of Feeney's qualified immunity. Id. at 380. Had a legal or factual element of Hicks' liberty deprivation remained undetermined, our directive undoubtedly would have acknowledged it. Instead, this court's instruction recognized that, in addition to the extent of plaintiff's damages, the only remaining issue in the litigation was Feeney's immunity. Thus, as plaintiff's counsel cogently observes, the denial of Hicks' liberty interest became "the law of the case" on remand. See Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 950 (3d Cir.1985) (on remand, trial court may not reconsider those issues not expressly or implicitly disposed of by appellate decision). As we observed in Cowgill v. Raymark Industries, Inc., 832 F.2d 798, 802 (3d Cir.1987), "[w]hen a court of appeals reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations of the trial court normally continue to work an estoppel."
 
 
 30
 The majority attempts to justify its conclusion that Hicks II failed to decide the due process issue by noting: "We made no findings as to whether a hearing took place and if not, why not." (Maj. op. at 155). The majority's response is inexplicable given the fact that Hicks II constituted an appeal from a summary judgment order; the parties conceded that no hearing occurred prior to Hicks' confinement. Finally, the majority's inquiry into "why" DSH failed to accord Hicks a hearing is irrelevant, or at least, not within the scope of plaintiff's knowledge. In light of the foregoing, I now consider the issue of appropriate sanction.II.
 
 
 31
 As the majority observes, it is well settled that a district court has discretion to issue sanctions for failure to comply with discovery orders. Ali v. Sims, 788 F.2d 954, 957 (3d Cir.1986); National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). However, we have additionally noted that "dismissal is a drastic sanction;" a court should be reluctant to deprive a litigant of the right to have his claim adjudicated on the merits. Titus v. Mercedes Benz of North America, 695 F.2d 746, 749 (3d Cir.1982). Accordingly, the following factors are relevant in determining a proper sanction:
 
 
 32
 (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
 
 
 33
 Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984). Two additional criteria limit the exercise of a court's discretion--the sanction must be "just" and must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). I agree with the majority's conclusion that three of the Poulis factors--namely, party responsibility, history of dilatoriness, and willful party conduct, weigh in favor of dismissal. However, my analysis of the remaining factors leads to the imposition of a less severe sanction.
 
 
 34
 As a result of Hicks II, the remaining issues properly before the district court on remand were the extent of plaintiff's damages, and whether Feeney was entitled to qualified immunity. Importantly, Hicks' refusal to testify to the details of his confinement prejudiced Feeney only in his attempt to defend against proof of damages. The majority suggests, however, that Hicks' conduct somehow precluded Feeney from establishing qualified immunity:
 
 
 35
 Certainly Hicks II announced some controlling legal principles but it is equally clear that Hicks could not have obtained any judgment until the qualified immunity issue was resolved. Even though the discovery does not on its face seem related to the qualified immunity issue, that issue was never reached and until it was decided no judgment was entered nor could one be properly entered for Hicks.
 
 
 36
 Since Hicks was not entitled to any judgment while qualified immunity remained open he could not obtain damages, nominal or otherwise, on this record.
 
 
 37
 (Maj. op. at 155 n. 4).
 
 
 38
 Although the existence of qualified immunity would have indeed barred plaintiff's recovery, it is unclear how Hicks' refusal to testify in any way prejudiced Feeney in establishing that defense. Because qualified immunity is an affirmative defense, the burden of proof is on the party seeking to invoke it. See Skehan v. Board of Trustees of Bloomsburg State College, 538 F.2d 53, 61-62 (3d Cir.), cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). The Supreme Court has asserted that a party is entitled to qualified immunity as long as his actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Mitchell v. Forsyth, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Because the qualified immunity inquiry is predicated upon determining what the defendant knew about extant legal norms at the time of the alleged liberty deprivation, Feeney could not have been prejudiced by plaintiff's refusal to be deposed. The evidence, if any, relating to that defense lay solely in Feeney's control. Contrary to the majority's conclusion, the district court could have determined the immunity issue on the record before it and rendered final judgment accordingly.
 
 
 39
 I agree with the majority's conclusion that Hicks' unwillingness to be deposed prejudiced Feeney's ability to defend against proof of damages.[2] However, given Hicks II 's establishment of a due process violation, fairness dictates that barring plaintiff from proving both actual and punitive damages constitutes a proper alternative sanction to dismissal. See Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co., 110 F.R.D. 363 at 369 (existence of alternate sanctions most important Poulis factor). Because the district court's discovery order was relevant only to damages, the proposed alternative sanction negates any prejudice resulting from Hicks' conduct. See Insurance Corp. of Ireland, 456 U.S. at 707, 102 S.Ct. at 2106. On the other hand, dismissal under these circumstances effectively condones defendant's liberty deprivation, thereby contravening our strong presumption against sanctions that decide the issues of a case. See Ali, 788 F.2d at 958.
 
 
 40
 Concededly, adoption of the alternative sanction would entitle plaintiff to nominal damages based upon defendant's due process violation, and in the event that the district court rejected Feeney's qualified immunity defense, to an award of attorney's fees pursuant to 42 U.S.C. Sec. 1988. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (denial of procedural due process is actionable under section 1983 for nominal damages without proof of actual injury). The majority, however, rejects plaintiff's entitlement to nominal damages, noting that Hicks' conduct has improperly transformed this suit into "one for attorney's fees."[3] (Maj. op. at 157). I disagree. At its essence, this action concerns defendant's erroneous and unconstitutional confinement of plaintiff at DSM for fifty-four days. The Supreme Court has continually vindicated deprivations of "absolute rights" that have not caused actual injury through the award of nominal damages. See Carey, 435 U.S. at 266, 98 S.Ct. at 1053. As the Court observed in City of Riverside v. Rivera, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986):
 
 
 41
 And Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in Sec. 1988, over and above the value of a civil rights remedy to a particular plaintiff...." (citation omitted) Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relative small damages awards.
 
 
 42
 Thus, I believe that Hicks' conduct has not obscured what remains as the preeminent issue in this case--the vindication of a constitutionally protected liberty interest.
 
 
 43
 The majority attempts to support its narrow construction of the remaining issues in this action by noting that because plaintiff is not a "prevailing party" within the meaning of section 1988, he is not entitled to attorney's fees. (Maj. op. at 157). See Hewitt v. Helms, --- U.S. ----, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). The majority correctly implies that Hicks can be a prevailing party only if Feeney is not entitled to qualified immunity. However, as I have already noted, plaintiff's refusal to be deposed is irrelevant to the resolution of the qualified immunity issue. Thus, plaintiff's failure to attain prevailing party status derives from the district court 's erroneous failure to consider the qualified immunity issue on remand, and not from Hicks' conduct.
 
 
 44
 Finally, I believe that neither the majority nor the district court should have considered counsel's entitlement to attorney's fees in determining appropriate sanctions. As the plaintiff observes, Hicks' entitlement to attorney's fees "was not a claim which was at issue in the order to provide discovery." See Insurance Corp. of Ireland, 456 U.S. at 707, 102 S.Ct. at 2107. Indeed, the Supreme Court has asserted that an attorney's fee award under section 1988 is not "compensation for the injury giving rise to an action. [The] award is uniquely separable from the cause of action to be proved at trial." White v. New Hampshire Dept. of Empl. Sec., 455 U.S. 445, 452, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982).
 
 III.
 
 45
 Therefore, although I would preclude plaintiff from establishing both actual and punitive damages, I would remand the case, as we initially did in Hicks II, for a determination only of Feeney's entitlement to qualified immunity and for such final disposition as is consistent with this opinion.
 
 
 
 [1]
 For a more detailed account of the underlying facts in this case, see Hicks v. Feeney, 770 F.2d 375, 376-77 (3d Cir.1985) (Hicks II )
 
 
 [2]
 Del.Code Ann. tit. 16, ch. 50, Secs. 5001-5014 (1983)
 
 
 [3]
 Hicks was being questioned about the notes he wrote during his confinement at DSH, which he did not have an opportunity to review prior to the deposition
 
 
 [4]
 Hicks filed a petition for panel rehearing which was granted by order of March 30, 1988. On rehearing, Hicks argues that he was entitled to judgment, at least for nominal damages, based on the doctrine of law of the case because our decision in Hicks II established "liability." See, e.g., Castle v. Cohen, 840 F.2d 173, 180 n. 10 (3d Cir.1988) (after remand, district court to consider court of appeals' opinion under law of case doctrine); Cowgill v. Raymark Indus., Inc., 832 F.2d 798, 802 (3d Cir.1987) (on remand, unreversed determinations of trial court become law of case). We have carefully considered that argument, but after reviewing the parties' rebriefing, must reject it. Certainly Hicks II announced some controlling legal principles but it is equally clear that Hicks could not have obtained any judgment until the qualified immunity issue was resolved. Even though the discovery does not on its face seem related to the qualified immunity issue, that issue was never reached and until it was decided no judgment was entered, nor could one be properly entered for Hicks
 Since Hicks was not entitled to any judgment while qualified immunity remained open he could not obtain damages, nominal or otherwise, on this record. Accordingly the district court, in its sound discretion, retained the power to impose a full panoply of sanctions for Hicks's refusal to submit to discovery. For the reasons set out infra we have concluded the district court did not abuse its discretion in imposing the sanction of dismissal.
 
 
 [1]
 The district court held that Hicks' confinement resulted from a "random and unauthorized act" of a state officer, rather than from the "state system itself." See Hicks, 770 F.2d at 378
 
 
 [2]
 In considering the effect of Hicks' conduct, the majority observed that Feeney was "prevented from preparing a defense as to the issue of (1) whether his failure to follow constitutionally required procedure caused Hicks' alleged damages; (2) whether Hicks would have remained at DSH even if the procedures had been followed; and (3) Hicks' actual damages. (Maj. op. at 155). Each of these factors related to damages and not to liability
 
 
 [3]
 Similarly, the district court predicated its rejection of an alternative sanction by asserting that Hicks "has lost whatever motivation he may have had to diligently pursue this lawsuit." The court's conclusion is undermined by its own observation that Hicks' refusal to be deposed derived from his embarrassment concerning the details of his confinement. Finally, Hicks' initiative to pursue this litigation is supported by his timely response to defendant's interrogatories