**GREAT WESTERN FUNDING, INC., Plaintiff,**

**Intercapital Fund, XXI; Terra Yield # 10 Joint Venture; Research Capital, Inc., Intervenors–Plaintiffs,**

v.

**Mark MENDELSON; Edward Silverman, M.D.; Franklin Square Hospital; Hampton Hospital Group, Inc.; Obermayer, Rebmann, Maxwell & Hippel; Charles M. Golden, Esq.; Robert A. MacDonnell, Esq.; Louis B. Kupperman, Esq.; Robert N.C. Nix, III, Esq.; P. Sue Miller; The Honorable F. Matthew Coppolino; David Elbaum, D.O.; Thomas Kelly; Mauro A. Checchio; James Duffy, Defendants.**

Civ. A. No. 91–5188.

United States District Court, E.D. Pennsylvania.

Oct. 5, 1994.

Memorandum Denying Reconsideration Dec. 1, 1994.

340

Timothy I. McCann, Brendan P. Mailey, Linda A. Carpenter, McCann, Mailey & Geschke, Robert T. Vance, Jr., Brown, Vance, Jackson & Smith, Philadelphia, PA, for plaintiffs.

Patrick K. McCoyd, Post & Schell, P.C., Michael K. Coran, Mark L. Alderman, Klehr, Harrison, Harvey, Branzburg & Ellers, Sean T. O'Meara, Archer & Greiner, Philadelphia, PA, for defendants Mendelson, Silverman, Franklin Square Hosp., Hampton Hosp. Group.

Daniel P. Finegan, Joseph P. Dougher, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, Richard A. O'Halloran, Adler & O'Halloran, P.C., Plymouth Meeting, PA, for defendants Obermayer, Golden, MacDonnell, Kupperman, Nix, Miller, Coppolino, Elbaum, Kelly, Checchio, Duffy.

## MEMORANDUM

JOYNER, District Judge.

The Motions before this Court today[1] are Joint Motions of Defendants[2] for Sanctions against the Plaintiffs and Intervening Plaintiffs[3] for Failing to Produce Billy Dan Bryson and John Mitchell for Depositions in Accordance with Court Order. These Motions request the extraordinary sanction of dismissal of Plaintiffs' claims. For the reasons explained below, in this case the request to dismiss is GRANTED.

### HISTORY OF DISCOVERY IN THIS ACTION

Although this case was filed more than three years ago, the deadline for discovery has only just passed and much of the requested discovery has never occurred. Although Plaintiffs assert that the issues at stake are "not complex" the docket entries reflect 124 separate documents and comprise 25 pages.

The issues Defendants raise in support of their Motions for Sanctions are that two witnesses have never appeared for any noticed deposition and that two witnesses have never appeared to complete their depositions.

1. In addition to the two Motions addressed in this Opinion (document nos. 114 and 118) are six other defense Motions to compel discovery (document nos. 98, 99, 102, 103, 112 and 113). In addition, Plaintiffs have two outstanding Motions (document nos. 101 and 117).

2. Defendants are divided into two groups, referred to as the Law Firm Defendants and the Board Defendants.

Law Firm Defendants are: Obermayer, Rebmann, Maxwell and Hippel, Charles M. Golden, Robert MacDonnell and Louis B. Kupperman.

Board Defendants are: Mark Mendelson, Edward Silverman, M.D., Hampton Hospital Group, Inc., Robert N.C. Nix, III, P. Sue Miller, The Honorable Matthew Coppolino, David Elbaum, D.O., Thomas Kelly, Maura Checchio and James Duffy.

Following is a brief history of discovery disputes in this case.[4]

*Billy Dan Bryson,* Former Vice President of Underwriting, Great Western Funding, Inc.

3/23/94 Mr. Bryson fails to appear for his first noticed deposition because of "business considerations."

4/14/94 Plaintiffs agree to produce Mr. Bryson for a deposition noticed for June 1, 2, and 3, 1994.

5/9/94 Mr. Bryson informs Defendants, via Plaintiffs' counsel, that he will not attend the June deposition.

5/19/94 Defendants file motion to compel Mr. Bryson's deposition, noticed for June 6, 7, and 8, 1994.

6/6–8/94 Mr. Bryson does not appear for his rescheduled deposition.

7/12/94 Court Order directing Mr. Bryson to appear in Philadelphia for a three day deposition.

7/13/94 Court–Ordered deposition agreed to and noticed for July 26, 27 and 28, 1994.

7/26–8/94 Mr. Bryson does not appear for his Court–Ordered deposition.

7/29/94 Plaintiffs' Counsel states that Mr. Bryson has received funds with which to travel to Philadelphia.

8/2/94 Mr. Bryson informs Defendants, through Plaintiffs' Counsel, that he will not travel to Philadelphia in any event.

3. In this Memorandum, both original and intervening plaintiffs are generally referred to as 'Plaintiffs' unless it is necessary to distinguish between the two groups.

Plaintiff Great Western Funding, Inc.'s rights to this litigation were purchased by a number of investors for $25,000. The investors are all creditors of Great Western Funding, Inc. and include plaintiffs Research Capital, Inc. and Terra Yield # 10 Joint Venture.

4. This chronology is adopted from one drawn up by Defendants in their Joint Reply Memorandum. Plaintiffs and Intervening Plaintiffs did not dispute the chronology in their Sur Reply Memorandum, but simply the characterization of certain events.

*John Mitchell,* Identified by Research Capital, Inc. and Terra Yield # 10 Joint Venture as sole 30(b)(6) Corporate Designee.

2/17/94   Mr. Mitchell's deposition noticed for March 3, 1994.

2/18/94   Plaintiffs' Counsel informs Defendants that they will produce Mr. Mitchell for his deposition.

3/1/94   Plaintiffs' Counsel informs Defendants that Mr. Mitchell will not attend his March deposition for "work-related" reasons.
Plaintiffs' Counsel agrees to produce Mr. Mitchell on April 8, 1994.

4/8/94   Mr. Mitchell does not attend his rescheduled deposition.

5/9/94   Mr. Mitchell informs Defendants, via Plaintiffs' Counsel, that he will not travel to Philadelphia for his deposition.

5/19/94   Defendants' Joint Motion to Compel Mr. Mitchell's deposition. Deposition noticed for June 23 and 24, 1994.

6/23–4/94   Mr. Mitchell does not attend his rescheduled deposition.

7/12/94   Court Orders Mr. Mitchell to appear in Philadelphia for three days for a deposition before August 15, 1994.

7/13/94   Parties agree to depose Mr. Mitchell on August 2, 3, and 4, 1994.

8/2–4/94   Mr. Mitchell does not attend his Court–Ordered deposition because of "participation in a trial" in Texas. However, the "trial" was a post-trial hearing scheduled for August 3, 1994, which was canceled. Mr. Mitchell agrees to appear on August 5 and 6 (a Friday and Saturday), but Defendants' Counsel is unavailable.

8/4/94   Mr. Mitchell informs this Court and Defendants, via Plaintiffs' Counsel, that he will not travel to Philadelphia for his deposition in any event.

*Robert Cooper,* Chief Executive Officer, Great Western Funding, Inc.

3/28/94   Mr. Cooper appears for deposition scheduled to begin that day and continue from day to day until completed. However, he states that he will leave at 4:00 p.m. and will not return the following day.

4/14/94   Mr. Cooper's deposition is rescheduled for May 11, 12, and 13, 1994.

4/28/94   Mr. Cooper informs Defendants, via Plaintiffs' Counsel, that he will not return to Philadelphia due to conflicting work schedules, but states that he is available, in Texas, for one day the next week.

5/5/94   Defendants agree to postpone the deposition for one week, but require the deposition to take place in Philadelphia.

5/6/94   Mr. Cooper informs Defendants, via Plaintiffs' Counsel, that he will not travel to Philadelphia for his deposition.

5/11–3/94   Mr. Cooper does not attend his rescheduled deposition.

5/19/94   Defendants file a Motion to Compel the deposition, noticed for June 20–22, 1994.

6/20–2/94   Mr. Cooper does not attend his rescheduled deposition.

7/12/94   Court Orders Mr. Cooper to be available for three days in Philadelphia for his deposition.

7/15/94   Plaintiffs agree to produce Mr. Cooper in Philadelphia between August 9 and 15, 1994.

8/4/94   Mr. Cooper informs this Court and Defendants, via Plaintiffs Counsel, that Mr. Cooper will not travel to Philadelphia for his Court Ordered deposition.

8/9–15/94   Mr. Cooper does not attend his Court–Ordered deposition.

*Jimmy Wolff,* Officer and Board Member, Great Western Funding, Inc.

3/21/94   Mr. Wolff appears for deposition scheduled to begin that day and continue from day today until completed. However, he states that he will leave at 4:00 p.m. and will not return the following day.

4/14/94   Mr. Wolff's deposition is rescheduled for May 9 and 10, 1994.

4/28/94   Mr. Wolff informs Defendants, via Plaintiffs' Counsel, that he will not return to Philadelphia due to conflicting work schedules, but states that he is available, in Texas, for one day the next week.

5/5/94  Defendants agree to postpone the deposition for one week, but require the deposition to take place in Philadelphia.

5/6/94  Mr. Wolff informs Defendants, via Plaintiffs' Counsel, that he will not travel to Philadelphia for his deposition.

5/9–10/94  Mr. Wolff does not attend his rescheduled deposition.

5/19/94 Defendants file a Motion to Compel the deposition, noticed for June 13–14, 1994.

6/13–4/94  Mr. Wolff does not attend his rescheduled deposition.

7/12/94  Court Orders Mr. Wolff to be available for three days in Philadelphia for his deposition.

7/15/94  Plaintiffs agree to produce Mr. Wolff in Philadelphia between August 9 and 15, 1994.

8/4/94  Mr. Wolff informs this Court and Defendants, via Plaintiffs Counsel, that he will not travel to Philadelphia for his Court–Ordered deposition.

8/9–15/94  Mr. Wolff does not attend his Court–Ordered deposition.

*Interrogatories and Document Requests*

3/10/93  Board Defendants serve Interrogatories and Request for Production of Documents on Great Western Funding, Inc. and Intervening Plaintiffs.

4/12/93  Plaintiffs and Intervening Plaintiffs do not respond to discovery.

6/14/93  Board Defendants serve Supplemental Interrogatories and Supplemental Request for Production of Documents on Great Western Funding, Inc.

7/14/93  Great Western Funding, Inc. does not respond to Board Defendants' discovery.

1/18/94  Great Western Funding, Inc. and Intervening Plaintiffs serve written response to the Board Defendants' Request for Documents, nine months late.

2/16/94  Great Western Funding, Inc. answers Board Defendants' Interrogatories, ten months late.[5]

3/7/94  Intervening Plaintiffs answer Board Defendants' Interrogatories, eleven months late.

3/15/94  Law Firm Defendants serve Interrogatories and Requests for Production of Documents on Plaintiffs.

3/22/94  Board Defendants serve Expert Interrogatories on Plaintiffs.

4/14/94  Plaintiffs do not respond to Law Firm Defendants Interrogatories or Requests for Production of Documents.

4/15/94  Law Firm Defendants request answers and documents within five days.

4/20/94  Plaintiffs do not respond to Law Firm Defendants' Interrogatories or Requests for Production of Documents.

4/21/94  Law Firm Defendants file motion to Compel discovery.

4/22/94  Plaintiffs do not answer Board Defendants' Expert Interrogatories.

5/11/94  This Court Orders Plaintiffs to answer Law Firm Defendants' discovery requests.

5/17/94  Law Firm Defendants serve Request for Admission with Supplemental Interrogatories and Requests for Production of Documents.

5/20/94  Plaintiffs serve objections to Law Firm Defendants' Requests for Production of Documents.

5/24/94  Intervening Plaintiffs respond to Board Defendants Expert Interrogatories, two months late.[6]

5/27/94  Plaintiffs do not respond to Court Ordered discovery.

6/16/94  Plaintiffs answer Law Firm Defendants' Requests for Admission, but do not respond to Supplemental Interrogatories and Requests for Production of Documents.

7/12/94  This Court Orders Plaintiffs to serve answers to law Firm Defendants' Interrogatories by July 18, 1994.

7/14/94  Plaintiffs agree to amend responses to Requests for Admission by July 18, 1994.

5. These answers are allegedly inadequate and are the subject of a separate motion to compel (document no. 113).

6. Defendants allege that the responses are inadequate.

7/18/94   Plaintiffs do not answer Court Ordered discovery or amend answers to Request for Admission.

7/19/94   Court Orders Plaintiffs to pay fees and costs for travel and produce documents by August 4, 1994.

7/20/94   Plaintiffs serve incomplete and unverified answers and objections to Law Firm Defendants' Interrogatories, three months late.

Plaintiffs agree to complete the answers and verify them within five days.

Plaintiffs do not serve amended responses to Requests for Admission.

7/27/94   Plaintiffs do not complete or verify answers to Law Firm Defendants' Interrogatories.

7/29/94   Plaintiffs serve unverified answer to one of Law Firm Defendants' Interrogatories.

7/29/94   Plaintiffs serve Supplemental and Amended Answers to Requests for Admission.

8/4/94   Plaintiffs serve unverified answers to three of Law Firm Defendants' Interrogatories.

Plaintiffs do not comply with Court Ordered discovery.

### STANDARD

Federal Rule of Civil Procedure 37(b)(2) states:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following ... dismiss[ ] the action. Fed.R.Civ.P. 37(b)(2).

Dismissal of an action is a serious and extraordinary sanction, yet the Supreme Court and the Third Circuit have both upheld District Courts that have dismissed complaints based on a party's unwillingness to cooperate in discovery. *Hicks v. Feeney*, 850 F.2d 152,

153 & 156 (3d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 786, 102 L.Ed.2d 777 (1989); *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640, 96 S.Ct. 2778, 2779–80, 49 L.Ed.2d 747 (1976). For example, when "crucial interrogatories" remained unanswered by plaintiff after seventeen months, the Supreme Court upheld a District Court's dismissal of the plaintiff's complaint. *Id.*

The Third Circuit has established a set of factors to guide a court deciding whether to dismiss an action. These factors are 1) the extent of the party's personal responsibility, 2) the prejudice to the adversary cause by the failure to meet scheduling orders and respond to discovery, 3) a history of dilatoriness, 4) whether the conduct of the party or the attorney was willful or in bad faith, 5) the effectiveness of sanctions other than dismissal and 6) the meritoriness of the claim or defense. *Poulis v. State Farm & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984). These are simply factors for a district court to consider, so "[n]ot all of these factors need be met for a district court to find dismissal warranted." *Hicks,* 850 F.2d at 156. In *Poulis,* for example, the Court only found three of the six elements, but these were enough to dismiss the case. 747 F.2d at 870.

*1. The Extent of the Party's Personal Responsibility.*

▇ Dismissal may be an unfair sanction when the party is not personally at fault. For example, when there is "no allegation that plaintiffs, as distinguished from their counsel, were in any way responsible for the failure to comply with the court's order," dismissal may be unfair. *Poulis,* 747 F.2d at 866. In contrast, when a plaintiff left early from a deposition and did not attend any subsequently scheduled depositions, the plaintiff was held personally responsible. *Hicks,* 850 F.2d at 156.

Here, Defendants argue that the Plaintiffs are personally responsible for many of the discovery problems. They point to testimony of Plaintiffs' first counsel explaining why he withdrew from the representation. The lawyer testified that he "had ethical differences

with [his] client in connection with the case. Other than to [say] that it was an issue relating to cooperation, [he was] not permitted by the attorney-client privilege to tell [ ] more than that. . . . [He] wasn't getting what [he] needed when [he] needed it." Joint Defendants' Memorandum of Law in Support of their Motion for Sanctions Against Plaintiff and Intervening Plaintiffs for Failing to Produce Billy Dan Bryson for Deposition in Accordance with Court Order (Defendants' Brief) at 7.

We note that of the four deponents discussed above, three of them were officers and directors of Great Western Funding, Inc. and one was the sole 30(b)(6) corporate designee of two other plaintiffs. Because a corporation acts through its agents, the failure of Messrs. Bryson, Mitchell, Cooper and Wolff [collectively, the deponents] to cooperate in their depositions is an act of the Plaintiffs.

Plaintiffs' main argument on this issue is that they are now willing to produce the four deponents in Philadelphia. They argue that because the deponents now agree to be deposed, that there is no claim that they have personal responsibility for discovery problems.[7] This Court notes, however, that Plaintiffs have agreed to produce these deponents in Philadelphia before, yet have at least fifteen "no shows" between them. In fact, four of those "no shows" were *after* we *ordered* the depositions to take place. With this track record, and given the timing of the offers to appear (in Plaintiffs' Answer to this motion to dismiss), we do not find Plaintiffs' offer to comply with discovery persuasive. *Godlove v. Bamberger, Foreman, Oswald & Hahn,* 903 F.2d 1145, 1149 (7th Cir.1990) ("Any last minute change of mind by plaintiff to . . . comply . . . was too little too late. . . . Her inadequate last minute 'compliance' attempt was properly rejected"), *cert. denied,*

499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 230 (1991).

Plaintiffs also argue that this Court must consider the claims of each of the four plaintiffs separately. Under this theory, Plaintiffs suggest that dismissal may be appropriate against Great Western Funding, Inc., Research Capital, Inc. and Terra Yield # 10 Joint Venture, but not against Intercapital Fund XXI. Plaintiff's and Intervening Plaintiffs' Memorandum of Law in Opposition to the Joint Motions for Sanction for Failing to Produce Dan Bryson and John Mitchell for Deposition in Accordance with Court Order (Plaintiffs' Brief) at 15.

Plaintiffs argue that Intercapital Fund XXI's representative has complied with discovery, so that its claims should be preserved. For example, Plaintiffs proclaim that Mr. Sacks, a representative of Intercapital Fund XXI, "appeared in Philadelphia for his deposition, answered all questions, and provided all documents in his possession, custody and control." This is hardly behavior to be lauded, but simply accepted as compliant with Federal Rules. Even though Mr. Sacks may have participated in his deposition, Intercapital Fund XXI has been as unresponsive to written discovery requests as the other plaintiffs. Accordingly, Intercapital Fund XXI will be considered in this Motion for Sanctions along with its co-plaintiffs.

Based on the discussion above, we find that the Plaintiffs are personally responsible, to at least some extent, for the discovery problems at issue here.

**2. The Prejudice to the Adversary Caused by the Failure to Meet Scheduling Orders and Respond to Discovery.**

■ Defendants claim that they have been prejudiced by Plaintiffs' recalcitrance in discovery. They argue that they have not been able to depose at least four witnesses, interrogatories have been answered incompletely,

---

7. Plaintiffs argue, "given the frank discussion that occurred at the August 4, 1994 status conference, in which Plaintiffs' counsel stated that the cooperating Intervening Plaintiff, Intercapital Fund XXI, at the very least should be given the opportunity to compel compliance with the Court's Orders regarding depositions, the Declarations evince the fact that Intercapital Fund

XXI's representative, Kenneth Sacks, has been able to assure that compliance." Plaintiffs' Sur Reply at 7. The Court disagrees with this statement, since despite Mr. Sacks' agreement to pay for Mr. Bryson and Mr. Mitchell to travel to Philadelphia for their Court-Ordered depositions, those deponents still refused to attend.

documents requested not produced, and that the discovery deadline passed August 15, 1994. They also point to the expense and time incurred in preparing for and appearing at depositions that never take place, and the expense in preparing the numerous discovery motions filed with this Court. In their support, Defendants point to the Third Circuit's recent holding that "[p]rejudice includes deprivation of the information through noncooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 874 (3d Cir.1994).

Plaintiffs concede that Defendants were prejudiced when the deponents refused to attend their depositions. They argue, however, that this prejudice is not great because actually, none of those deponents are very important witnesses. Plaintiffs' Brief at 2–3, 5–6, 13–15. Plaintiffs, however, may not determine who may be deposed based on Plaintiffs' opinion of importance. Fed.R.Civ.P. 30(a)(1). This is especially the case where each of the deponents was an officer or director of the plaintiff entities and one has been designated as the sole 30(b)(6) corporate designee of Plaintiffs, by Plaintiffs themselves.

Second, Plaintiffs argue that if Defendants really need information from the deponents, that they can get it by telephone deposition or written interrogatory just as easily. They state, "[t]he Defendants made no attempt at any time during the course of this litigation, even when it was objectively apparent that Messrs. Bryson and Mitchell were not inclined to come to Philadelphia for their depositions, and that Messrs. Cooper and Wolff were not inclined to return to Philadelphia to complete their depositions, to attempt to take and complete those depositions by telephone, a procedure which is contemplated in the Rules of Civil Procedure." Plaintiff's and Intervening Plaintiffs' Sur Reply Memorandum of Law in Opposition to the Joint Defense Motion for Sanctions (Plaintiffs' Sur Reply Brief) at 8. We agree that depositions may be taken by telephone, but do not agree that this is a party's only alternative if a deponent refuses to appear personally. *See*

*Southwest Hide Co. v. Goldston,* 127 F.R.D. 481, 486 (N.D.Tex.1989) ("The mere fact there is more than one source of relevant information on a given issue does not per se require the Plaintiff to pursue the avenue of discovery which is most convenient or least embarrassing to the defendant").

Finally, and most incredibly, Plaintiffs attempt to put responsibility on this Court for any break-down of discovery. "[I]f the Court does not, at the very least, give these witnesses the opportunity to make good their commitments, the absolute failure to make discovery will result from conduct not entirely of the Plaintiff's own doing." Plaintiffs' Brief at 16. Plaintiffs are in no position to cast blame on this Court for behavior of the deponents. We note that each deponent has refused to attend Court-ordered depositions, as well as other depositions noticed by Defendants. This Court is under no obligation to issue weekly Orders to Compel, ceasing only when deponents choose to comply.

Despite Plaintiffs' arguments, we find that Defendants still have not received much of the discovery they requested, and accordingly, have been prejudiced by Plaintiffs' failure to comply with discovery.

### 3. A History of Dilatoriness.

■ Defendants simply point to the history of discovery in this case to support their assertion that there is a history of dilatoriness. In turn, Plaintiffs direct us to look to the docket entries to see that there is a "paucity of Orders compelling discovery on the part of the Plaintiffs," apparently indicating compliance with discovery. Plaintiffs' Brief at 17. They argue also that they have responded to all outstanding discovery requests, but concede that there is "objective, relevant dilatoriness ... i[n] the failure of Messrs. Cooper and Wolff to appear in Philadelphia to complete their depositions and on the part of Messrs. Bryson and Mitchell to appear in Philadelphia to commence and complete their depositions." Plaintiffs' Brief at 17.

Simply because Plaintiffs have not been repeatedly ordered to comply with discovery does not mean that they have not been dilatory. In fact, of the two motions Plaintiffs

have outstanding, one is a motion to reconsider an earlier discovery Order of this Court, which only delays discovery further. This Court notes that Plaintiffs have a pattern of responding to discovery requests late, by as much as ten to eleven months. *Poulis,* 747 F.2d at 868 ("A history by counsel of ignoring [discovery] time limits is intolerable"); *cf. Scarborough v. Eubanks,* 747 F.2d 871, 878 (3d Cir.1984) (brief filed 10 days late; "tardiness was serious but not flagrant").

At the very least, Plaintiffs have been dilatory in producing witnesses for depositions, demonstrated by the fact that depositions for four witnesses have not been taken more than six months after first being noticed. Given this history, we find a pattern of dilatoriness.

*4. Whether the Conduct of the Party or the Attorney was Willful or in Bad Faith.*

▇ Defendants argue that Plaintiffs' conduct is willful and in bad faith, demonstrated by the fact that the four deponents repeatedly refused to attend depositions, once each in violation of Court order.

▇ Plaintiffs concede that these actions were "willful" but deny that they were taken in bad faith. They argue at great length that their willfulness is irrelevant because they had excuses for ignoring depositions. Plaintiffs' reasoning misses the point. First, *Poulis* asks whether the actions were taken "willfully *or* in bad faith." Dismissal may be inappropriate when a party's noncompliance is "due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958). In *Hicks,* where plaintiff repeatedly refused

to attend his depositions, once in violation of a court order, the Third Circuit held plaintiff's "conduct was willful." 850 F.2d at 156.

Second, there is evidence that Plaintiffs acted with bad faith. Plaintiffs argue that Bryson and Mitchell could not attend their depositions in Philadelphia for financial reasons. This is not wholly true because even after these deponents received assurances of funding, they still did not attend their depositions scheduled for August. *See* Chronology, *supra;* Joint Defendants' Reply Memorandum of Law in Support of their Motions for Sanctions (Defendants' Reply) Ex. F at 2; Defendants' Brief Ex. E. In addition, the correspondence between the parties reflects a serious lack of regard by the deponents to their responsibilities in this litigation.[8]

We make, however, no specific finding of bad faith by Plaintiffs. Instead, we find that Plaintiffs acted willfully, which is sufficient under *Poulis.*

*5. The Effectiveness of Alternative Sanctions.*

▇ Defendants assert that alternative sanctions "would be futile" and argue that there is no reason to believe that alternative sanctions would encourage Plaintiffs to comply with discovery when they have resisted it up till now.

In contrast, Plaintiffs apparently assert that they have not been sanctioned enough, and that we should try alternative sanctions first. They suggest that we fine them and impose "progressive monetary sanctions for any continued failure to comply with the Court's order with regard to depositions." Plaintiffs' Brief at 19. Plaintiffs also argue

---

8. "With regard to the depositions of Messrs. Wolff and Cooper, they have declined to return to Philadelphia for the continuation of their depositions.... Messrs. Cooper and Wolff have agreed to make themselves available for depositions in Dallas, Texas. If this is not acceptable to you, I can only suggest that you file the appropriate motion with the Court." Letter from Robert T. Vance, Plaintiffs' Counsel to Patrick McCoyd, Defendants' Counsel, May 6, 1994.

"This letter will confirm our conversation this morning wherein you confirmed that in addition to Cooper and Wolff, Bill Dan Bryson also re-

fuses to appear in Philadelphia for his deposition." Letter from Mary K. McCabe, Defendants' Counsel to Robert Vance, May 9, 1994.

"Dear Mr. Bryson: According to your message, you will not agree to come to Philadelphia for your deposition. You will make yourself available for a deposition in Texas for one day only.... You have determined not to come to Philadelphia despite the fact, as I indicated to you last week, that funds are available to pay your round trip airfare from Texas to Philadelphia." Letter from Robert Vance to Dan Bryson, August 2, 1994.

that they should not be sanctioned until there is a due process hearing.

This Court does not find Plaintiffs' arguments persuasive. First, Plaintiffs have violated Court Orders and Court imposed deadlines in the past, in addition to violating rules of discovery with months-late, sketchy responses. When this Court imposed monetary sanctions on Plaintiffs, their response was to file a Motion for Reconsideration. *Godlove*, 903 F.2d at 1149 ("Plaintiff overlooks that an earlier monetary sanction was imposed but she promptly notified the court she would not pay until after she had taken an appeal").

Second, this Court warned Plaintiffs in the July 12, 1994 Status Conference that sanctions were possible if there was further noncompliance. *Id.* ("Plaintiff had been amply warned about the increasing likelihood of sanctions. She should have foreseen the possibility of dismissal").

Third, no due process hearing is required before dismissing a case. Plaintiffs have filed two responses to Defendants' Motions for Sanctions stating their arguments, and they had ample opportunity to comply with this Court's Orders. *Id.* ("There was nothing left for the court to do at a formal hearing except waste more time of the court and defendants").

Based on the above discussions, we find that imposing alternative sanctions would not be effective to cure the prejudice to Defendants or promote compliance by Plaintiffs.

*6. The Meritoriness of the Claim or Defense.*

Defendants assert that they have provided a complete defense to Plaintiffs' claims against them. Predictably, Plaintiffs disagree. This litigation arises out of Defendants' alleged failure to procure a first priority security interest to Great Western Funding, Inc., which allegedly led to the failure of financing, leading to loss of money by Plaintiffs. Defendants argue that the Letter of Intent between Plaintiffs shows that there was no obligation of Defendants to file the security interest.

We do not apply summary judgment standards to determine whether a case is meritorious. *Poulis,* 747 F.2d at 869. The Third Circuit has held that when "plaintiff makes out a prima facie case, but the defendant raises a prima facie defense, the factor may not weigh in favor of the plaintiff." *Adams,* 29 F.3d at 876–77. Without getting into the intricacies of the Letter of Intent, UCC law and contract law in general, we find that Plaintiffs made out a prima facie case and that Defendants made out a prima facie defense. Accordingly, the meritoriness of Plaintiffs' case is not a factor in our decision to dismiss.

## CONCLUSION

■ *Poulis* provides a list of factors used to determine whether a court should dismiss an action based on a party's unwillingness to comply with discovery. Even though a court need not find that all factors are met to dismiss a case, in this action, we do so find. We find that Plaintiffs have, to a greater and lesser degree, personal responsibility for the history of willful dilatoriness that has prejudiced the Defendants. We find that no alternative sanctions would be effective to cure the problems and that the meritoriness of Plaintiffs' claims is not an issue. Accordingly, Civil Action 91–5188 is hereby dismissed with prejudice.

Defendants have also requested monetary relief. This will be addressed in a future Order of this Court.

## MEMORANDUM ON RECONSIDERATION

December 1, 1994

JOYNER, District Judge.

Before this Court is Intervening Plaintiff Intercapital Fund XXI's Motion for Reconsideration of this Court's October 5, 1994 Memorandum and Order. For the reasons that follow, this Motion is denied.

Our October 6, 1994 Memorandum and Order granted Defendants the extreme sanction of dismissal. We dismissed the action based on the Third Circuit's guidance to courts deciding whether to dismiss an action. *Poulis v. State Farm Fire & Cas. Co.,* 747

F.2d 863, 868 (3d Cir.1984). Under *Poulis,* Courts consider six factors: 1) the extent of the party's personal responsibility, 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery, 3) a history of dilatoriness, 4) whether the conduct of the party or the attorney was willful or in bad faith, 5) the effectiveness of sanctions other than dismissal and 6) the meritoriness of the claim or defense. *Id.* These are simply factors for a district court to consider, so "[n]ot all of these factors need be met for a district court to find dismissal warranted." *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 786, 102 L.Ed.2d 777 (1989). We found that five of the factors directed in favor of dismissal.

■ A motion for reconsideration is intended to permit a party to present newly discovered evidence, or correct manifest errors of law or fact. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). It is not an opportunity for a party to relitigate already decided issues or to present previously available evidence. *Id.*

■ Intercapital's Memorandum in support of its Motion does not present any newly discovered evidence or new legal arguments to this Court. Rather, Intercapital's council, Robert T. Vance, Esquire, has filed a Declaration in support of its arguments. This Declaration admittedly does not include any new evidence, but simply consolidates previously available evidence. The Declaration, moreover, supports this Court's decision to grant the extreme sanction of dismissal.

Intercapital urges this Court to find that we ruled incorrectly when we earlier found that Intercapital was personally liable for the discovery problems that led to dismissal. It makes a number of arguments to support its claim that it is not similarly situated to Plaintiff and the other Intervening Plaintiffs, so

therefore, its claims should not be dismissed. Many of these arguments are meritless. For example, Intercapital argues that it was not subject to any discovery orders that it failed to comply with. Reply Brief at 2–3. This argument ignores the fact that each discovery order granted to Defendants ordered "Plaintiff and Intervening Plaintiffs" to comply. Intercapital cannot argue that it was not subject to these orders because we did not write, "Plaintiff and Intervening Plaintiffs, including Intercapital Fund XXI."

Intercapital argues vigorously that it, unlike Plaintiff and the other Intervening Plaintiffs, is not personally responsible for discovery breakdowns, and that it should not be penalized for their misdeeds. In support of this argument, it asserts that the two deponents who refused to attend their depositions (Mitchell and Bryson) were not corporate designees of Intercapital, that its corporate designee (Sacks) was fully deposed, that Sacks volunteered to pay the costs of Mitchell and Bryson's travel to Philadelphia for their depositions, and that Intercapital otherwise complied with all discovery.

Although none of this information is new and was discussed in our October 6, 1994 Memorandum and Order, we briefly discuss it again. We appreciate that Intercapital's corporate designee was fully deposed, and we appreciate that he volunteered to pay for Mitchell and Bryson's travel. However, even after funds were made available, both still refused to attend.[1]

Moreover, so far as written discovery is concerned, Intercapital is not faultless. Intercapital asserts that it has fully complied with all written discovery, albeit with delays of many months. However, Defendants argue that they were irremediably prejudiced by at least one of those delays. Intercapital admittedly delayed production of documents that were stored in California and those documents were destroyed by the January, 1994 earthquake in Los Angeles. The earthquake

---

1. Intercapital presents a Declaration of Sacks dated August 10, 1994, where he promises to pay the travel expenses of Bryson and Mitchell. Intercapital argues that because neither Mitchell or Bryson made a refusal to travel after August 10, 1994, that they are now willing to travel if their

expenses are paid for. However, in letters earlier presented to this Court, it is apparent that Sacks agreed to pay their travel, but not hotel, expenses earlier, on July 29, 1994, yet on August 2 and 4, 1994, Mitchell and Bryson still refused to travel.

**350**

was not within Intercapital's control; however, if it had produced the documents in a timely manner, they would not have been destroyed in the earthquake.[2]

Second, Intercapital asserts that the reason it never verified its answers to Interrogatories was because it only had personal knowledge of 30 of the more than 150 questions. This is no excuse, however. Intercapital was able to, but did not, verify the answers of which its corporate designee had personal knowledge. There is no indication in the March 22, 1994 letter from Mr. Cameron to Mr. Vance that Sacks' verification was unwanted, or that a particular person was required to verify the Interrogatories. Failure of Intercapital to verify its answers was a personal violation of the discovery process.

Intercapital also failed to timely produce many documents that were in the possession of Intercapital's Texas counsel. Intercapital's Philadelphia counsel argues that any failings of Intercapital's Texas counsel cannot be attributed to Intercapital. However, Intercapital has control of the agents it hires and is bound by their failures as well as its own. Accordingly, we see no reason to reverse our finding that Intercapital was dilatory in written discovery.

Finally, at no point in this litigation previous to the motions for sanctions, did Intercapital seek to distinguish itself from the other Plaintiffs. Now, Intercapital argues that we demonstrated our misunderstanding of its role in this litigation by referring to Plaintiff and Intervening Plaintiffs jointly as "Plaintiffs" in the October 6, 1994 Memorandum. However, all Plaintiffs have been represented by the same counsel since early 1993. Intercapital and the other Intervening Plaintiffs filed motions and responded to motions and discovery requests jointly with Plaintiff. It was not until sanctions became likely that Intercapital attempted to distance itself from the other Intervening Plaintiffs by arguing that it was less guilty of delay than they.

This however, is not sufficient. As discussed above, Intercapital is independently at fault for discovery violations.

Accordingly, we DENY Intercapital's motion to reconsider our October 6, 1994 Order. This denial is based on the fact that Intercapital has presented no new evidence or raised any new legal arguments that makes the Order incorrect. Further, we find that Intercapital is personally responsible for many of the discovery delays that led to this Court's extreme sanction of dismissal. Because Intercapital was personally responsible, dismissal of the claims is appropriate against it as well as the Plaintiff and other Intervening Plaintiffs.

---

2. Defendants' Sur Reply presents this Court with evidence to suggest that the Los Angeles documents were not destroyed by the earthquake, but were intentionally withheld by Intercapital. Intercapital has requested leave of this Court to respond to this evidence. We hereby DENY leave to reply. The purpose of a motion for reconsideration is for the movant to present the court with newly discovered evidence or correct manifest errors of law. We did not rely on Defendants' allegations in our original decision, so any rebuttal to the allegations is irrelevant.